# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

THE WILDERNESS SOCIETY, INC.;
AMERICAN WILDLANDS; PACIFIC
RIVERS COUNCIL,
                    *Plaintiffs-Appellees,*

            v.

MARK REY; ANN VENEMAN; DALE
BOSWORTH, Chief, United States
Forest Service,
                    *Defendants-Appellants.*

No. 06-35565

D.C. No.
CV-03-00119-DWM

OPINION

Appeal from the United States District Court
for the District of Montana
Donald W. Molloy, District Judge, Presiding

Argued and Submitted
June 9, 2010—Portland, Oregon

Filed September 22, 2010

Before: Cynthia Holcomb Hall, David R. Thompson, and
M. Margaret McKeown, Circuit Judges.

Opinion by Judge McKeown

16095

**COUNSEL**

John C. Cruden, Acting Assistant Attorney General, Washington, D.C., for the appellants.

Leslie Lagomarcino, U.S. Department of Agriculture Office of General Counsel, Washington, DC, for the appellants.

David C. Shilton, Barclay T. Samford (argued), and Katherine W. Hazard, U.S. Dept. of Justice, Washington, D.C., for the appellants.

Timothy J. Preso (argued), Bozeman, Montana, for the appellees.

---

**OPINION**

McKEOWN, Circuit Judge:

The Forest Service Decisionmaking and Appeals Reform Act ("ARA"), requires the Secretary of Agriculture to establish notice and comment procedures through the Chief of the United States Forest Service for proposed decisions related to "projects and activities implementing land and resource management plans." Pub. L. No. 102-381, § 322, 106 Stat. 1419 (1992) (codified as 16 U.S.C. § 1612 note). The Act also requires the Secretary to modify the appeals procedure for decisions concerning these projects. *Id.* In 2003, the Forest Service revised the regulations implementing the ARA to significantly limit the scope and availability of notice, comment, and appeals procedures. In response, several environmental groups, The Wilderness Society, American Wildlands, and Pacific Rivers Council (together "TWS"), asserted facial challenges against three sections of the revised regulations, alleging that they are inconsistent with the ARA. The district court agreed and granted TWS declaratory and injunctive relief.

Given intervening case law, we dismiss TWS's claims as non-justiciable.

## BACKGROUND

The National Forest Management Act of 1976 directs the Forest Service to develop "land and resource management plans for units of the National Forest System." 16 U.S.C. § 1604(a). Before 1992, although it was not statutorily required, the Forest Service provided a post-decisional appeals process for certain decisions related to these plans. Ultimately, the Forest Service discontinued the process because it was too costly to maintain. In 1992, partly as a result of negative public reaction to the cancellation, Congress enacted the ARA. The Forest Service then adopted regulations implementing the legislation.

In 2003, the Forest Service issued revised regulations. One month later, TWS challenged three sections of the revised regulations claiming that the provisions impermissibly limit the scope of notice, comment, and appeals. Because the ARA mandates the unqualified application of notice, comment, and appeals procedures to "projects and activities implementing land and resource management plans," ARA § 322(a), TWS contends that the regulations are at odds with the statute.

Section 215.20(b) of the regulations exempts decisions of the Secretary and Under Secretary (together "the Secretary") from notice, comment, and appeals requirements:

> Decisions of the Secretary of Agriculture or Under Secretary, Natural Resources and Environment are not subject to the notice, comment, and appeal procedures set forth in this part. A decision by the Secretary or Under Secretary constitutes the final administrative determination of the Department of Agriculture.

36 C.F.R. § 215.20(b).

Section 215.13(a) limits the right of appeal to those who have submitted *substantive* comments:

> Individuals and organizations who submit substantive written or oral comments during the 30-day comment period for an environmental assessment, or 45-day comment period for a draft environmental impact statement (§ 215.6, 40 CFR 1506.10; FSH 1909.15, Chapter 20), except as provided for in paragraph (c) of this section, may file an appeal.

36 C.F.R. § 215.13(a).

Finally, § 215.12(f) exempts from appeal those projects that the Forest Service finds not to have a significant effect on the environment and that are thus categorically excluded from certain National Environment Policy Act ("NEPA") requirements:

> The following decisions and actions are not subject to appeal under this part . . . : (f) Decisions for actions that have been categorically excluded from documentation in an [environmental assessment] or [environmental impact statement] pursuant to FSH 1909.15, Chapter 30, section 31.

36 C.F.R. § 215.12(f).

In 2006, the district court declared all three of these regulatory provisions invalid. However, because TWS had not alleged a waiver of sovereign immunity in its complaint, the district court concluded it could not impose a remedy. The court allowed TWS time to amend its complaint.

In an unrelated action—while this case was proceeding in the district court in Montana—a district judge in the Eastern

District of California granted nationwide injunctive relief with respect to §§ 215.20(b) and 215.12(f) of the 2003 regulations. *Earth Island Inst. v. Pengilly*, 376 F. Supp. 2d 994 (E.D. Cal. 2005). In view of this decision, TWS amended its complaint to request merely declaratory relief with respect to those two regulations. The claim for a nationwide injunction with respect to § 215.13(a) remained unchanged. TWS also amended its complaint to allege a waiver of sovereign immunity under the Administrative Procedure Act.

The district court granted TWS's motion for summary judgment and declared §§ 215.20(b) and 215.12(f) invalid. It imposed a nationwide injunction prohibiting the Forest Service from acting under § 215.13(a).

## ANALYSIS

On appeal, the Forest Service argues that intervening Ninth Circuit and Supreme Court case law, stemming from *Pengilly*, renders the case non-justiciable. We consider de novo the question of standing. *See Nevada Land Action Ass'n v. United States Forest Serv.*, 8 F.3d 713, 715 (9th Cir. 1993).

## I. INTERVENING CASE LAW

In *Earth Island Institute v. Ruthenbeck*, the Forest Service challenged the district court's ruling in *Pengilly* on both standing and ripeness grounds. 490 F.3d 687 (9th Cir. 2007). We held that while plaintiffs had standing to pursue their claims, only two of the provisions, 36 C.F.R. §§ 215.4(a) and 215.12(f), were ripe for review. Earth Island specifically mentioned only one project in its complaint, and only the latter two provisions were applicable in the context of that project. *Ruthenbeck*, 490 F.3d at 696.

[1] The Supreme Court did not reach the ripeness question. Instead, it held that *none* of Earth Island's claims were justiciable because plaintiffs lacked standing:

> To seek injunctive relief, a plaintiff must show that he is under threat of suffering "injury in fact" that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury.

*Summers v. Earth Island Institute*, 129 S. Ct. 1142, 1149 (2009) (citation omitted). The Court reiterated that where the regulations being challenged do not require or forbid any action on the part of the respondents, standing is substantially more difficult to establish. *Id.* Earth Island lacked standing to challenge §§ 215.4(a) and 215.12(f), because it failed to identify an "application of the invalidated regulation that threaten[ed] imminent and concrete harm to the interests of [its] members." *Id.* at 1150.

**[2]** The Court elaborated that neither the vague desire to use the forest land in the future, nor the procedural harm, "*in vacuo*," of being denied the right to comment on Forest Service actions, was sufficient to confer Article III standing. *Id.* at 1150-51. As the Court explained, " '[s]uch 'some day' intentions—without any description of concrete plans, or indeed any specification of *when* the some day will be' "—do not support standing. *Id.* at 1151 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992)). Earth Island's claim of standing was insufficient because it was "not tied to application of the challenged regulations, because it [did] not identify any particular site, and because it relate[d] to past injury rather than imminent future injury that is sought to be enjoined." *Id.* at 1150.

## II. STANDING

The district court rejected the Forest Service's challenge to TWS's standing, reasoning that "[b]ecause the ARA's purpose is to establish notice and comment and appeals proce-

dures, deprivation of the procedures injures the Plaintiffs in a sense contemplated by Congress." In addition to this procedural injury, the district court found that TWS had standing because it suffered an "informational injury" in being denied notice of Forest Service actions. The nature of the informational injury, according to the court, was that TWS "would not know that action [wa]s being considered until it [wa]s too late and irreversible action as [sic] already been taken."

On appeal, the Forest Service renews its challenge to TWS's standing.[1] It argues that *Summers* undermines TWS's alleged procedural injury given the Court's holding that "deprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing." *Summers*, 129 S. Ct. at 1151. The Forest Service also argues that because it does not challenge the district court's ruling on the notice and comment portions of § 215.20(b), any informational injury previously suffered has been remedied.

Recognizing the hurdle posed by *Summers*, TWS now argues that it has standing with respect to § 215.12(f) because that challenge is specifically tied to a location and to a particular project, and because one of its members suffered an aesthetic or recreational injury-in-fact. Although its challenges to §§ 215.20(b) and 215.13(a) are not tied to a particular project or application, TWS contends that *Summers* is not controlling with respect to its claim of "informational injury," because the Court did not address that issue in its decision.

TWS also broadens its alleged injury to include not simply the informational deprivation caused by the loss of notice and comment, but also the informational deprivation resulting from its inability to participate in the "appeal-and-decision

---

[1]Although TWS is the appellee in this case, it nonetheless bears the burden of establishing standing for each type of relief sought. *See Summers*, 129 S. Ct. at 1149.

process." If an informational injury of this sort is indeed cognizable, TWS would defeat the Forest Service's standing challenge with respect to all three regulations. We address the standing arguments in turn.

## A. AESTHETIC AND RECREATIONAL INJURY-IN-FACT

In response to the Forest Service's renewed standing challenge, TWS now asserts that it has associational standing to challenge § 215.12(f) by virtue of member Michael Anderson's recreational and aesthetic injuries. This argument stems from the Supreme Court's discussion of standing in *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*:

> An association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

528 U.S. 167, 181 (2000).

Anderson submitted a declaration in June 2004 stating that he had extensively used Oregon's Umpqua National Forest in the past. Later in the declaration he testified that the Ash Creek Fire Salvage Project ("Ash Creek Project") in the Umpqua Forest injured TWS's interest in "protecting and restoring the ecological integrity of national forest lands." Anderson went on to note that under the prior regulations, the project would have been subject to appeal and TWS would have had the opportunity to lessen or eliminate this injury.

**[3]** TWS is correct that *Summers* did not eliminate the notion of aesthetic and recreational injury. *Summers*, 129 S. Ct. at 1149. To sustain standing on this basis, it would be suf-

ficient to show that Anderson had repeatedly visited an area affected by a project, that he had concrete plans to do so again, and that his recreational or aesthetic interests would be harmed if the project went forward without his having the opportunity to appeal. *Id.* Where the recreational use of a particular area has been extensive and in close proximity to the plaintiff, we have held that an affiant's expressed intention to continue using the land is sufficiently concrete to underwrite an injury-in-fact. *See White Tanks Concerned Citizens, Inc. v. Strock*, 563 F.3d 1033, 1039 (9th Cir. 2009). Nonetheless, a vague desire to return to the area "without any description of concrete plans, or indeed any specification of *when* the some day will be" does not support a finding of actual or imminent injury. *Summers*, 129 S. Ct. at 1151.

[4] Anderson demonstrates extensive past use of the Umpqua National Forest. Although he does not offer any testimony as to when he might return, we do not discount the fact that he authored a hiking book about the area and says he wants to continue going there with his family in the future. On the other hand, Anderson authored the hiking book more than thirty years ago, and he expresses his general intention to return not just to the Umpqua National Forest but to several national forests in both Oregon and Washington state. This "some day" general intention to return to the national forests of two geographically large states is too vague to confer standing because Anderson has not shown that he is likely to encounter an *affected* area of the Umpqua National Forest in his future visits. *See Defenders of Wildlife*, 504 U.S. at 565.

[5] Relatedly, the Court in *Summers* explained that to find standing based on an affidavit, a court must assume not only that the affiant would use a particular tract of land in the future, "but also that the tract is about to be developed by the Forest Service in a way that harms [plaintiff's] recreational interests." *Summers*, 129 S. Ct. at 1150. Past injury is not sufficient to confer standing. *Id.* There must be an "imminent future injury that is sought to be enjoined." *Id.*

**[6]** While it is true that Anderson alleges an injury connected to a particular project located in the Umpqua National Forest (the Ash Creek Project), the alleged injury from the Ash Creek Project is not connected to Anderson's recreational or aesthetic interest in enjoying that particular forest in the future. Anderson does not allege that his future enjoyment is in any way threatened by the Ash Creek Project. He testified, rather, that *TWS*'s interest in protecting and restoring the ecological integrity of national forest lands, generally, is threatened by the project. There is no indication that the Ash Creek Project would affect the particular area of the Umpqua Forest that Anderson plans to use in the future, or that it would otherwise impact his personal recreational or aesthetic interests in the land. The lack of any linkage between the project and the claimed injury undermines the effort to establish standing.

Compounding the problem is the matter of timing. TWS filed its complaint in July 2003. The Ash Creek Project was not approved until July 2004. At the time the complaint was filed, § 215.12(f) had no relevance to the project because the Forest Service had classified it as not falling under the NEPA categorical exclusion. Thus, pursuant to NEPA, a Notice of Intent for an Environmental Impact Statement was posted in March 2003, and public meetings were held as late as July 24, 2003. It was not until November 19, 2003 that interested parties were informed that the project would fall into a categorical exclusion under NEPA, thus exempting it from the appeals process under § 215.12(f). "The existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed." *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830 (1989). In July 2003, the record facts about the Ash Creek Project could not confer standing on TWS.

**[7]** We conclude that Anderson's passing reference to the Ash Creek Project is not central to TWS's claim. It was not relevant to § 215.12(f) at the time the complaint was filed and it did not represent a future, imminent harm sought to be enjoined. Even if Anderson's intention to return to Umpqua

National Forest was sufficiently specific, which we doubt, he did not allege that the Ash Creek Project itself, or its results, affected or would affect his aesthetic or recreational interests in the land he intended to use in the future. In short, as in *Summers*, the declaration is deficient and insufficient to support standing.[2]

### B.   INFORMATIONAL INJURY

In its standing analysis, the district court confirmed both procedural and informational injury. Although it acknowledged that procedural injury is "sufficient for standing only in limited circumstances," the court held that in this case, because the ARA created the specific right to notice, comment, and appeals procedures, "deprivation of th[ose] procedures injur[ed TWS] in a sense contemplated by Congress."

The court explained further that the injury in question was:

> sufficiently concrete and particularized because the harm [was] the loss of the opportunity to comment and appeal, not the specific impact or lack thereof of the Plaintiffs' comments. Plaintiffs need not assert that any specific injury will occur in any specific national forest that their members visit.

This finding cannot be squared with the Supreme Court's analysis in *Summers*. The Court expressly held that deprivation of procedural rights, alone, cannot confer Article III standing. *See Summers*, 129 S. Ct. at 1151. TWS concedes this point on appeal. It points instead to the district court's finding that it suffered informational injury resulting from

---

[2]The irony of this result is that following *Summers*, TWS and Anderson have known that this single declaration was the centerpiece of their claim to aesthetic and recreational standing. At oral argument, TWS's counsel acknowledged that an amended declaration or a new declaration in a follow-on suit might well remedy any deficiency.

"the violation of the obligation to provide notice." It now broadens this allegation to include not just informational injury under the exemption from the notice requirement of § 215.20(b), but informational injury embodied in all three provisions' deprivation of its right to appeal.

**[8]** As a preliminary matter, the Forest Service urges us to reject any standing argument based on the § 215.20(b) exemption from notice and comment requirements because it decided not to appeal the district court's ruling with respect that provision. One problem with this tactic is that the notice, comment, and appeal rights come as a package. The right to appeal a Forest Service decision is of little value if one never receives notice of that decision in the first place. In the end, however, the Forest Service's characterization of the appeal has no bearing on the matter. While *Summers* does not expressly discuss informational injury, the Court's discussion of procedural injury casts serious doubt on the applicability of informational injury here. We are not convinced that the doctrine of informational injury can be applied to the statutory framework of the ARA, regardless of the specific provision.

The notion of an informational injury serving as an injury-in-fact sufficient for standing can be traced to *Federal Elections Commission v. Akins*, 524 U.S. 11 (1998). In that case, a group of voters challenged the Federal Election Commission's refusal to treat the American Israel Public Affairs Committee as a "political committee," thus requiring disclosure of certain information about campaign-related activities under the Federal Election Campaign Act. *Akins*, 524 U.S. at 15-16. The Court held that the voters had suffered an injury sufficiently concrete and particularized to give them standing in that they were denied information that the Federal Election Campaign Act of 1971 required be made public. *Id.* at 21. Although this informational injury was quite general and widely shared, because "the informational injury at issue [was] directly related to voting, the most basic of political rights, [it wa]s sufficiently concrete and specific such that the

fact that it [wa]s widely shared [did] not deprive Congress of constitutional power to authorize its vindication in the federal courts." *Id.* at 24-25.

Courts have found similar statutory rights to information—the deprivation of which can give rise to concrete injury sufficient for the purposes of Article III standing—under the Freedom of Information Act ("FOIA"), *Pub. Citizen v. United States Dep't of Justice*, 491 U.S. 440, 449 (1989); the Fair Housing Act, *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 374 (1982); the Clean Water Act, *American Canoe Ass'n, Inc. v. City of Louisa Water & Sewer Comm'n*, 389 F.3d 536, 542 (6th Cir. 2004); and the Federal Advisory Committee Act ("FACA"), *Cummock v. Gore*, 180 F.3d 282, 290-93 (D.C. Cir. 1999).

According to TWS, the ARA also confers a statutory right to information because it provides that "the Secretary shall give notice of proposed actions of the Forest Service concerning projects and activities implementing land and resource management plans for the National Forest System." This information would have assisted TWS "in furthering [its] goals of forest conservation, and in educating [its] members and the public in general about environmentally harmful Forest Service projects." TWS also argues that it was denied information, not otherwise available, by the provisions eliminating its right to appeal. The right to appeal "provides the public with substantial information about National Forest projects that would not otherwise be available."

**[9]** To ground a claim to standing on an informational injury, the ARA must grant a right to information capable of supporting a lawsuit. *See generally* Cass R. Sunstein, *Informational Regulation and Informational Standing: Akins and Beyond*, 147 U. PA. L. REV. 613, 642-43 (1999) (concluding that the "principal question after *Akins*, for purposes of 'injury in fact,' is whether Congress or any other source of law gives the litigant a right to bring suit"). Notice, of course, is a form

of information (information that certain projects are being proposed), however Congress's *purpose* in mandating notice in the context of the ARA was not to disclose information, but rather to allow the public opportunity to comment on the proposals. Notice is provided as a predicate for public comment. Similarly, although an appeal might result in the dissemination of otherwise unavailable information, the statute does not contemplate appeals for this purpose, but to allow the public an opportunity to challenge proposals with which they disagree. In other words, the ARA grants the public a right to process and to participation. Even though these rights necessarily involve the dissemination of information, they are not thereby *tantamount* to a right to information per se.

**[10]** The Seventh Circuit's treatment of informational injury and the ARA is instructive. In *Bensman v. United States Forest Service*, the court declined to find an explicit right to information in the text of the ARA, explaining that:

> The ARA's history indicates that Congress intended the statute to restore the citizen participation that existed prior to the Service's proposed 1992 rule changes. In introducing the bill, Senator Fowler criticized the Service's proposal to modify "85 years" of public participation in Service decisions, and hailed the ARA as a way to open "a systematic channel for public participation . . . as well as maintaining an appeal system of review." 138 Cong. Rec. S11,643 (daily ed. Aug. 6, 1992) (statement of Sen. Fowler). He also noted that the appeals process "is simply a chance for a citizen's views, a taxpayer's views about his own forest" to be heard. *Id.*

> By way of contrast, for example, FOIA's goal is "to serve the 'basic purpose of ensuring an informed citizenry, vital to the functioning of a democratic society.' " *Lakin Law Firm, P.C. v. FTC*, 352 F.3d 1122, 1123 (7th Cir. 2003) (quoting *Solar Sources, Inc. v.*

*United States*, 142 F.3d 1033, 1037 (7th Cir. 1998)).
Similarly, Congress intended the explicit reporting
and informational requirements in FACA to control
advisory committees and to allow public scrutiny of
the advice provided to the Executive Branch by pri-
vate individuals. *See Cummock*, 180 F.3d at 284-85.
In short, statutes like FOIA and FACA that have
served as the basis for informational standing have
a goal of providing information to the public; the
ARA's goal is simply to increase public participation
in the decision-making process. The difference in
purposes seems to belie [the] claim that the ARA
provides a right to information.

408 F.3d 945, 958 (7th Cir. 2005).

**[11]** We agree with the Seventh Circuit's analysis.
Although *Bensman* did not discuss informational injury in
connection with the notice requirement (as opposed to the
appeal requirement), the analysis with respect to Congress's
intention in enacting the ARA is equally applicable. Indeed,
it is borne out by the Supreme Court's discussion of proce-
dural standing in *Summers*. *See Summers*, 129 S. Ct. at 1151.
There, the Court said that procedural injury, standing on its
own, cannot serve as an injury-in-fact. A concrete and partic-
ular project must be connected to the procedural loss. *Id.*
TWS urges us to recognize an informational injury as a result
of a procedural deprivation. It asks us, in effect, to modify the
Supreme Court's mandate such that procedural deprivations
cannot be injuries-in-fact unless they are tied to particular
projects *or* unless they result in an informational harm. The
difficulty with TWS's analysis is that it simply reframes every
procedural deprivation in terms of informational loss. This
approach would allow an end run around the Supreme Court's
procedural injury doctrine and render its direction in *Summers*
meaningless. We decline to apply the theory of informational
injury in the context of the procedural rights encompassed by

the ARA.

**DISMISSED.**