The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Charles PRESSLEY,
Defendant–Appellant.

No. 88CA0360.

Colorado Court of Appeals,
Division II.

June 28, 1990.

Rehearing Denied Aug. 2, 1990.

Certiorari Denied Jan. 28, 1991.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Catherine P. Adkisson, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, State Public Defender, Robin Desmond, Deputy State Public Defender, Denver, for defendant-appellant.

Opinion by Judge METZGER.

Defendant, Charles Pressley, appeals the judgment of conviction entered on a jury verdict finding him guilty of sexual assault on a child and first degree sexual assault. We affirm.

During a night in June 1987, a five-year-old girl was sexually assaulted on the lawn of the apartment house where she lived. The assailant was observed by several witnesses, one of whom gave chase but was unable to apprehend him. In the pocket of a shirt found at the scene was a municipal court fine receipt bearing defendant's name, and the shirt was identified as belonging to defendant. A hair whose characteristics were consistent with the defendant's hair was later found on the victim's nightgown.

The victim was taken to a hospital where she was examined, but she became frightened when approached for a vaginal swabbing and no vaginal samples were taken. The victim later received counseling at the Kempe National Center for the Prevention and Treatment of Child Abuse. Defendant's motion for discovery of the victim's records from the Kempe Center was denied; the trial court found that these records were protected by the psychologist-patient privilege and that the privilege had not been waived.

At trial, the defendant's girlfriend testified that the defendant had told her to lie about his whereabouts the night of the assault, and that he had returned to her house at approximately the time of the assault sweaty, out of breath, without his shirt, saying that he had been in a fight at a bowling alley and had been chased.

## I.

Defendant first contends that the trial court committed reversible error in denying his motion for discovery of the victim's medical and psychological records from the Kempe Center. We reject this contention.

The claimant of a privilege bears the burden of establishing the applicability of the privilege, *Williams v. People,* 687 P.2d 950 (Colo.1984), and the privilege is applicable in criminal and civil cases alike. *See People v. Reynolds,* 195 Colo. 386, 578 P.2d 647 (1978). The burden of establishing waiver is on the party seeking to overcome the claim of privilege. *Clark v. District Court,* 668 P.2d 3 (Colo.1983). Defendant does not challenge the existence and applicability of the privilege but asserts that certain incidents caused a waiver of the privilege.

### A.

First, he contends that the waiver by the victim's mother allowing disclosure of medical records from the hospital also waived the victim's privilege as to the Kempe Center records, and he cites *Kelley v. Holmes,* 28 Colo.App. 79, 470 P.2d 590 (1970) in support of that contention. That case is inapposite.

*Kelley v. Holmes, supra,* was a civil case involving injuries suffered in an automobile collision. One of the main issues was the

nature and extent of the plaintiff's injuries. In the course of treatment, plaintiff had sought treatment from a physician whom he did not call at trial. Plaintiff claimed that, by not calling this physician at trial, he had not waived the physician-patient privilege as to that physician. The court found that, because one of the main issues to be determined was the extent of plaintiff's injuries, he had waived the physician-patient privilege as to all physicians consulted concerning those injuries.

■ This case is distinguishable for two reasons. First, the privilege claimed in *Kelley v. Holmes* was solely the physician-patient privilege, and the consultation of all physicians was for the same injuries. Here, the victim was provided with medical care at the hospital for her physical injuries only, but she sought treatment for psychological, not physical, problems at the Kempe Center. Thus, the privilege claimed for the Kempe Center treatment is the psychologist-patient privilege, a separate privilege, for separate injuries. *See People v. District Court*, 719 P.2d 722 (Colo.1986). Accordingly, the waiver of the physician-patient privilege for the hospital records did not constitute a waiver of the psychologist-patient privilege for the Kempe Center records.

■ Second, the issues involved in *Kelley v. Holmes* and in this case deal with different legal principles. In this criminal case, the People were required to prove the elements of first degree sexual assault and sexual assault on a child. The victim's psychological condition is not an element of either offense, and thus, it is irrelevant.

The appropriate inquiry to determine the existence of a waiver is whether the privilege holder has injected her physical or mental condition into the case as the basis of a claim. *Clark v. District Court, supra.*

Nothing in the record indicates that the victim or the People injected the issue of her post-assault mental condition into the case. The victim did not testify at trial; she began her treatment at the Kempe Center after the sexual assault, and defendant does not allege that the victim's men-

tal condition is an issue in this case. Accordingly, the waiver by the victim's mother allowing disclosure of medical records from the hospital did not constitute a waiver of the victim's privilege concerning the Kempe Center records.

### B.

■ Defendant also argues that the privilege concerning the Kempe Center records was waived because the victim's mother allowed a police detective to be present during two of the victim's treatment sessions. We disagree.

The burden of establishing waiver is on the party seeking to overcome the claim of privilege. *People v. District Court, supra.* A waiver "must be supported by evidence showing that the privilege holder, by words or conduct, has expressly or impliedly forsaken his claim of confidentiality with respect to the information in question." *Clark v. District Court*, 668 P.2d 3 (Colo. 1983).

At these treatment sessions, the detective sat in a separate room and observed the treatment through a one-way mirror. Although the victim's mother was aware of the detective's presence, the trial court found that the reason for the detective's presence was unclear. The court further found that:

"It appears from the evidence that the Kempe Center advised him, and he came there and witnessed the two sessions. It certainly is a possibility that the Kempe Center violated the privilege which the child had by allowing the officer to be present. But the privilege is not that of the Kempe Center. The privilege is that of the child to be exercised through her parents.

There's no evidence before the court that [the mother] at any time was, one, aware of her right to claim a privilege, number two, that she ever authorized the officer to be present, ever agreed that the information given during those sessions would be available to him. His conversations were with Dr. Ruth Kempe."

Because there is ample support for these findings in the record, they will not be disturbed on review. *See Page v. Clark,* 197 Colo. 306, 592 P.2d 792 (1979).

### C.

■ Defendant finally argues that, even without a waiver, due process requires the disclosure of the victim's Kempe Center records. We disagree.

In all cases, a victim's post-assault psychotherapy records are privileged, and absent waiver, a defendant may not compel their discovery. *People v. District Court, supra.* The vague possibility that the victim may have made some relevant statements to her therapist during treatment does not provide a sufficient basis to override the victim's right to rely upon her statutory privilege. Absent a waiver of this right, a general due process claim cannot outweigh the public policy considerations inherent in the privilege. *See People v. District Court, supra.*

### II.

Defendant next contends that the prosecution's failure to obtain vaginal samples from the victim requires reversal of his conviction. We disagree.

■ In order to establish a due process violation for failure to preserve potentially exculpatory evidence, the defendant must establish that: 1) the evidence was suppressed or destroyed by the prosecution; 2) the evidence possessed an exculpatory value that was apparent before it was destroyed; and 3) the defendant was unable to obtain comparable evidence by other reasonably available means. *People v. Enriquez,* 763 P.2d 1033 (Colo.1988).

■ There is no indication that samples from the victim possessed an exculpatory value that was apparent before the prosecution failed to obtain such samples. Any evidence taken from the body of the victim could have had inculpatory as well as exculpatory evidentiary value. *See People v. Greathouse,* 742 P.2d 334 (Colo.1987).

The record shows that the victim became frightened when medical staff attempted to take these samples, only hours after she had been violently raped, and that the attending physician was unwilling to obtain such samples forcibly. We are equally unwilling to rule that a five-year-old child, shortly after being sexually assaulted, must then have her body again violated, even by a physician. *See People v. Woertman,* 786 P.2d 443 (Colo.App.1989).

### III.

■ Defendant's final contention is that the evidence was insufficient to establish beyond a reasonable doubt that he committed the offense. We disagree.

A challenge to the sufficiency of the evidence requires a determination whether the relevant evidence, both direct and circumstantial, when reviewed as a whole and in a light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable person that the defendant is guilty of the charge beyond a reasonable doubt. *People v. Gonzales,* 666 P.2d 123 (Colo.1983). The prosecution must be given the benefit of every reasonable inference which might be fairly drawn from the evidence. *People v. Martinez,* 191 Colo. 428, 553 P.2d 774 (1976).

Besides the evidence described above, including defendant's shirt and the municipal court receipt, the record shows that defendant fit the description of the suspect chased by one of the witnesses, and he was identified by the victim's mother as the man she had seen lurking outside her bedroom window shortly before the assault.

Furthermore, defendant's explanation of his whereabouts and of his lost shirt were contradicted by other testimony. The defendant's girlfriend testified that he was absent for approximately an hour around the time of the assault and that, upon his return, he asked her to lie about his whereabouts during his absence by saying he was at home. He also told her that he had been in a fight at a nearby bowling alley and had lost his shirt during that altercation. However, witnesses from the bowling alley testified that no fight had oc-

curred there that night. The defendant stated to police that he had lost his shirt some 12 hours before the assault; the victim's mother and another witness both testified that he was wearing his shirt shortly before the assault.

This evidence is sufficient to sustain a conviction, and we will not invade the province of the jury to find otherwise. *People v. Gonzales, supra.*

Judgment affirmed.

SMITH and PLANK, JJ., concur.