The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Anthony Edwin MARSH, Defendant–
Appellant.

No. 08CA1884.

Colorado Court of Appeals,
Div. I.

Dec. 22, 2011.

4

John W. Suthers, Attorney General, John T. Lee, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Ari Krichiver, Deputy State Public Defender, Anne T. Amicarella, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge MILLER.

Defendant, Anthony Edwin Marsh, appeals his judgment of conviction entered on a jury verdict finding him guilty of nine counts: three counts of sexual assault on a child by one in a position of trust, two counts of sexual assault on a child, two counts of sexual assault on a child as part of a pattern of

abuse, one count of sexual exploitation of a child, and one count of inducement of child prostitution. We affirm.

In affirming, we address two issues of first impression in Colorado:

- First, we consider whether images contained in an "Internet cache," a storage mechanism whereby a computer automatically stores information displayed on a web page, are sufficient to establish that a defendant knowingly possessed sexually exploitative material under section 18–6–403, C.R.S.2011. We conclude that such evidence, when considered together with evidence that the defendant intentionally sought the sexually exploitative material, can be sufficient to show that the defendant possessed the images at the time he or she visited the web page.

- Second, we consider whether a parent has the absolute authority to waive a minor child's psychologist-patient privilege. We conclude the nature of a conflict between the interests of a parent and of his or her child may preclude the parent from waiving the child's psychologist-patient privilege.

We also address the numerous other issues raised by defendant.

## I. Background

Defendant has three daughters, R.K., B.L., and C.O., and several grandchildren. The charges in this case stem from incidents involving three of defendant's granddaughters, C.S., E.M., and S.O. C.S. is the daughter of R.K., E.M. is the daughter of B.L., and S.O. is the daughter of C.O. The granddaughters' ages ranged from nine to eleven years old at the time of trial.

Each of these granddaughters testified at trial that defendant took her to his basement, where she sat on his lap in front of his computer. C.S. and E.M. testified that while they sat on his lap, defendant viewed pornographic material on his computer and rubbed their genitalia over their clothes. C.S. also testified that defendant performed oral sex on her, asked her to touch his penis in exchange for receiving a banana, and required

C.S. and her younger brother to simulate sexual intercourse in exchange for a treat. S.O. testified that defendant similarly touched her crotch while she sat on his lap in front of the computer. Although she denied at trial remembering what was on the computer while defendant touched her, evidence was admitted that she previously told investigators that defendant watched pornographic movies on these occasions.

A.S., E.M.'s older sister, testified that she too had been sexually assaulted by defendant in his basement and that she had been with defendant when he looked at pictures of naked children on his computer. The allegations made by A.S. resulted in a previous criminal case against defendant that was dismissed.

In addition to the two issues set forth above, defendant contends that the trial court committed reversible errors by (1) denying defendant's request for a continuance; (2) denying three challenges for cause of prospective jurors; (3) ruling that if defendant called another two of his granddaughters to testify that they had not been sexually assaulted by him, the prosecution would be permitted to offer evidence of his prior convictions, including one for sexual assault; (4) impermissibly limiting defendant's cross-examinations of R.K. and C.O.; (5) allowing two prosecution witnesses to provide expert testimony under the guise of lay opinion; and (6) ruling that taking judicial notice of the dismissal of the criminal charges regarding A.S. would open the door to defendant's previous convictions being presented to the jury. He also contends that the cumulative effect of the trial court's errors, other than insufficiency of evidence, warrants reversal. We reject each contention.

## II. Sufficiency of the Evidence

Defendant contends that there was insufficient evidence to support his conviction for sexual exploitation of a child as a class 4 felony. We disagree.

### A. The Statute

Section 18–6–403[1] makes it unlawful to knowingly possess or control any sexually exploitative material, which it defines[2] to include any electronic or digitally reproduced material that depicts a child participating in, or being used for, explicit sexual conduct. The offense is a class 6 felony but is increased to a class 4 felony if the defendant possesses more than twenty items of sexually exploitative material. § 18–6–403(5)(b)(II), C.R.S.2011. Defendant does not contend that the evidence was insufficient to convict him of a class 6 felony. Rather, he contests the sufficiency of the evidence to establish that he knowingly possessed more than twenty different items of sexually exploitative material during the relevant time frame set out in the complaint, January 1, 2007 through May 16, 2007.

### B. Facts

The facts regarding this issue are undisputed. Pursuant to a search warrant, police seized defendant's computer on April 26, 2007. Forensic analysis of the computer revealed numerous sexually exploitative images. The prosecution presented a compilation of seven "lost" files, thirty-eight "recent file thumbs," one image from the computer's "My Pictures" folder, and seventeen images from the "AOL cache," for a total of sixty-three images.

The prosecution's computer expert testified that the seven lost files were created on April 24, 2007, but had been deleted from the computer before it was seized two days later. The thirty-eight recent file thumbs were smaller images depicting files that had been opened on the computer at some time but had been deleted from the hard drive. The computer expert could not specify when the files had been opened or when they had been deleted. The My Pictures image remained stored on the hard drive in the My Pictures folder when police seized the computer.

The expert also testified that the AOL cache contained images downloaded from web pages visited using defendant's computer. He explained that an Internet cache, such as the AOL cache, is a storage mechanism by which the computer automatically stores information displayed on a web page. When a user revisits a web page with information saved in the Internet cache, the web page will load the locally saved information instead of re-downloading the information from the Internet. This process allows web pages to load more quickly. The expert was unable to identify the exact date defendant's computer had saved the images in the AOL cache, but he did testify that the earliest date on which these seventeen images could have been saved to the AOL cache was March 7, 2007, which is within the relevant time frame.

The jury found defendant guilty of knowingly possessing more than twenty different items of sexually exploitative material within the relevant time frame. Therefore, defendant was convicted of a class 4 felony.

Defendant does not contest the sufficiency of the evidence regarding the seven lost files or the My Documents file. Therefore, if the evidence is sufficient regarding the seventeen AOL cache images, then the number of sexually exploitative items knowingly possessed by defendant during the relevant time frame exceeds twenty, supporting the class 4 felony conviction. We conclude that the evidence is sufficient regarding the seventeen AOL cache images and therefore do not consider the recent thumb files.

### C. Analysis

When asked to review the sufficiency of the evidence supporting a guilty verdict, we "determine whether any rational trier of fact might accept the evidence, taken as a whole and in the light most favorable to the prosecution, as sufficient to support a finding of the accused's guilt beyond a reasonable

1. Section 18–6–403(3), C.R.S.2011, states, in relevant part: "A person commits sexual exploitation of a child if, for any purpose, he or she knowingly: ... [p]ossesses or controls any sexually exploitative material for any purpose...."

2. " 'Sexually exploitative material' means any photograph, motion picture, video, video tape, print, negative, slide, or other mechanically, electronically, chemically, or digitally reproduced visual material that depicts a child engaged in, participating in, observing, or being used for explicit sexual conduct." § 18–6–403(2)(j), C.R.S. 2011.

doubt." *People v. Sprouse*, 983 P.2d 771, 777 (Colo.1999). In making this determination concerning the AOL cache images, we consider three issues: (1) the meaning of the term "possession" as used in section 18–6–403; (2) whether Internet cache images can be used as evidence of possession; and (3) if so, whether defendant knowingly possessed the AOL cache images.

### 1. The Meaning of "Possession" as Used in the Statute

Our interpretation of the term "possession" is guided by several principles of statutory construction. "The primary goal in statutory interpretation is to ascertain and effectuate the General Assembly's intent, and we begin this task by examining the plain meaning of the statutory language." *Platt v. People*, 201 P.3d 545, 551 (Colo.2009). "We read words and phrases in context and construe them literally according to common usage unless they have acquired a technical meaning by legislative definition. Where the language is clear and unambiguous, we do not resort to other rules of statutory construction." *Klinger v. Adams County Sch. Dist. No. 50*, 130 P.3d 1027, 1031 (Colo.2006) (citation omitted). When the language is ambiguous, we may consider other aids to statutory construction, including the object sought to be attained by the General Assembly. *Bostelman v. People*, 162 P.3d 686, 690 (Colo.2007) (citing *Klinger*, 130 P.3d at 1031).

"Possession" is not defined in section 18–6–403. *Cf. Patton v. People*, 35 P.3d 124, 131 (Colo.2001) (finding that "possession" of a controlled substance is not statutorily defined); *People v. Garcia*, 197 Colo. 550, 554, 595 P.2d 228, 231 (1979) (" 'Possession' is not defined in the [weapons] statute, nor is it a term of art in the law."). Therefore, we must give the term "possession" its generally accepted meaning. *See People v. Gross*, 670 P.2d 799, 801 (Colo.1983) ("A common term is to be given its generally accepted meaning.").

According to *Webster's Third New International Dictionary* 1770 (2002), "possession" is "the act or condition of having in or taking into one's control or holding at one's disposal." Similarly, *Black's Law Dictionary* 1281 (9th ed. 2009), defines "posses-sion" as "[t]he fact of having or holding property in one's power; the exercise of dominion over property." Possession need not be exclusive. In construing the statute prohibiting possession of a weapon by a previous offender, our supreme court has held that possession does not require the ability to exclude others, because "imposing the requirement of exclusive control alters the generally accepted meaning of the term, making it both unduly restrictive and a potential source of confusion for jurors." *People v. Martinez*, 780 P.2d 560, 561 (Colo.1989); *see also Garcia*, 197 Colo. at 554, 595 P.2d at 231.

The General Assembly's declarations concerning this statute demonstrate the intent to extend a broad reach to the conduct prohibited. *See Hernandez v. People*, 176 P.3d 746, 753 (Colo.2008) ("Often the best guide to determining legislative intent is the General Assembly's declaration accompanying the statute."). The declarations include the following:

- "[T]o protect children from sexual exploitation it is necessary to prohibit the production of material which involves or is derived from such exploitation and *to exclude all such material from the channels of trade and commerce.*" § 18–6–403(1), C.R.S.2011 (emphasis added).
- "[E]ach time [sexually exploitative] material is *shown or viewed* the child is harmed." § 18–6–403(1.5), C.R.S.2011 (emphasis added).
- Sexually exploitative "material is used to break down the will and resistance of other children to encourage them to participate in similar acts of sexual abuse." *Id.*

Thus, the General Assembly clearly intended to reach each instance of viewing of sexually exploitative material in all channels of trade and commerce, including the Internet. The General Assembly also sought to protect children from being groomed for sexual abuse by preventing adults, like defendant, from showing them sexually exploitative material from any channel of trade or commerce.

We therefore conclude that for purposes of section 18–6–403, "possession" means the

non-exclusive control or dominion over sexually exploitative material,[3] and the statute requires that any such control or dominion be carried out knowingly.

### 2. Internet Cache Files as Evidence of Possession

Defendant does not contest that one may possess or control electronic or digital images on a computer for purposes of section 18–6–403. Indeed, the definition of "sexually exploitative material" in section 18–6–403(2)(j) encompasses any electronically or digitally reproduced visual material obtained on the Internet. *See Fabiano v. Armstrong,* 141 P.3d 907, 910 (Colo.App.2006) (receipt of a solicited e-mail attaching prohibited material constitutes possession for purposes of the statute).

■ Defendant nonetheless argues that only persons with specialized knowledge can access Internet cache files and that there is no evidence that he knew of the existence of the seventeen files in the AOL cache, that he knew how to access them, or that he exercised any physical dominion or control over them. This argument, however, addresses only whether the mere existence of the files in the AOL cache constitutes knowing possession or control of them. Defendant ignores that the files in the AOL cache provide evidence that the images were previously viewed on his computer. Evidence of this fact was provided by the prosecution's computer expert and conceded in defendant's opening brief, which states that these images were stored in the AOL cache "following the simple act of visiting a website."

Thus, the existence of the seventeen files in the cache constitutes proof that defendant's computer was used to visit web pages containing sexually exploitative material. That visit or viewing of the web pages consti-

tutes possession of the images displayed on the web pages.

When a web page is visited, an image is displayed on the computer screen. When the image is viewed, the user possesses and controls it in the sense that he or she has the ability to enlarge, save, copy, forward, or print the image. The user can also show the image on the screen to others. *See Ward v. State,* 994 So.2d 293, 301 (Ala.Crim.App.2007) (defendant had possession of images viewed on web pages because he had the ability to copy, print, email, or save them); *People v. Kent,* 79 A.D.3d 52, 910 N.Y.S.2d 78, 89 (N.Y.App.Div.2010) ("The defendant knowingly accessed the Web page and displayed it on his computer screen for his personal consumption, establishing his dominion and control over the images."), *leave to appeal granted,* 17 N.Y.3d 797, 929 N.Y.S.2d 105, 952 N.E.2d 1100 (2011) (table); *State v. Hurst,* 181 Ohio App.3d 454, 909 N.E.2d 653, 665 (2009) (evidence sufficient because the defendant "sought out the images and exercised dominion and control over them"); *State v. Mercer,* 324 Wis.2d 506, 782 N.W.2d 125, 136 (App.2010) (evidence was sufficient because the "user could save, print or take some other action to control the images, and the user affirmatively reached out for and obtained the images knowing that the images would be child pornography"); *see generally* Ty E. Howard, *Don't Cache Out Your Case: Prosecuting Child Pornography Possession Laws Based on Images Located in Temporary Internet Files,* 19 Berkeley Tech. L.J. 1227, 1254 (2004).

■ We therefore hold that the presence of digital images in an Internet cache can constitute evidence of a prior act of possession.[4]

---

**3.** Here, the trial court's jury instruction defining "possession" was consistent with this understanding of the term:

"POSSESSION," as used in these instructions, does not necessarily mean ownership, but does mean the actual, physical possession, or the immediate and knowing dominion or control over the object or the thing allegedly possessed. "Possession" need not be exclusive, provided that each possessor, should there be more than one, actually knew of the presence

of the object, or thing possessed, and exercised actual physical control or immediate, knowing dominion or control over it.

**4.** Possession can be established by circumstantial evidence in connection with other crimes. *See, e.g., People v. Robinson,* 226 P.3d 1145, 1154 (Colo.App.2009) (possession of drugs); *People v. Warner,* 251 P.3d 556, 565–66 (Colo.App.2010) (possession of a gun).

Other courts have reached similar conclusions. *See, e.g., Tecklenburg v. Appellate Div.*, 169 Cal.App.4th 1402, 87 Cal.Rptr.3d 460, 472 (2009) ("[T]he [Internet] cache evidenced defendant's knowing possession or control of the images. There was no need for additional evidence that defendant was aware of the [tagged image file format] or cache in order for the defendant to have violated [the child pornography statute]."); *People v. Josephitis*, 394 Ill.App.3d 293, 333 Ill.Dec. 188, 914 N.E.2d 607, 616 (2009) ("[Internet cache] files, even absent knowledge of their presence or how to control them may be proper evidence of past possession."); *see also* Giannina Marin, Note, *Possession of Child Pornography: Should You Be Convicted When the Computer Cache Does the Saving for You?*, 60 Fla. L. Rev. 1205, 1231 (2008); Howard, 19 Berkeley Tech. L.J. at 1254.

In this case, the files in the AOL cache provide evidence of prior possession of the images displayed by web pages visited. The prosecution's computer expert testified that the seventeen images were displayed on web pages visited using defendant's computer and that these images were all saved to the AOL cache no earlier than March 7, 2007. Therefore, since the police seized the computer on April 26, 2007, the prosecution presented unrebutted evidence that each of these images was viewed on web pages visited during the relevant time frame of January 1, 2007 through May 16, 2007.

### 3. Knowing Possession by Defendant

■ Finally, the prosecution presented substantial evidence that defendant possessed these images knowingly. This evidence includes the following:

- The computer belonged to defendant and was in his house and under his control.
- Three of defendant's granddaughters testified that he viewed sexually exploitative material on his computer while they sat on his lap, and a fourth provided the same information to investigators.
- In addition to the AOL cache images, lost files, and My Pictures image, numerous other images fitting the definition of sexually exploitative material were found on the computer's hard drive.
- Three of the images contained in the AOL cache are identical to three lost images that were saved to the computer on April 24, 2007.

Based on this evidence, the jury could infer that defendant, and not another person, on multiple occasions viewed sexually exploitative material using the computer on which the images were found. The jury could also infer that, on at least three occasions, defendant intentionally saved images he viewed on the Internet to his hard drive. Thus, the jury could decide that defendant did not accidently or unintentionally visit the web pages from which the cache files were created.

We therefore conclude that the prosecution presented sufficient evidence to prove that defendant knowingly possessed more than twenty items fitting the definition of sexually exploitative material during the relevant time frame.

## III. Psychologist–Patient Privilege

Defendant contends that the trial court erred by refusing to allow him to question A.S. about a session she had with a psychologist and denying his request to enter the psychologist's report of this session into evidence. We are not persuaded.

### A. Facts

Several years prior to the filing of charges in this case, A.S. alleged that defendant had sexually assaulted her, and charges were filed against him. B.L., A.S.'s mother, sent her to a psychologist. After the session, the psychologist provided B.L. with a written report. Defense counsel represented to the trial court in this case that B.L. gave him a copy of the report in 2003, when he represented defendant in the prior case, and that he also received a copy from the Boulder district attorney's office, presumably in connection with that case. The prior case was dismissed.

When A.S. testified at the trial in the present case that defendant had sexually assaulted her, defendant sought to cross-examine her using information obtained from the

psychologist's report and to enter the report into evidence. The trial court pointed out that the report was protected by the psychologist-patient privilege and held that neither B.L. nor the Boulder district attorney's office had waived or was authorized to waive the privilege on behalf of A.S. In response to the court's inquiry, A.S.'s guardian ad litem (GAL) said she would not waive the privilege on behalf of A.S. The trial court held that A.S.'s session with the psychologist and the psychologist's report remained protected by the psychologist-patient privilege and were inadmissible.

On appeal, defendant contends that (1) the psychologist's report was never privileged because the session with A.S. was not a treatment session, and (2) if the report was privileged, B.L. waived the privilege on behalf of A.S. Defendant does not contend that the Boulder district attorney waived the privilege.

### B. Analysis

#### 1. Privileged Status of the Psychologist Session and Report

We apply here the principles of statutory interpretation discussed above.

█ The psychologist-patient privilege is created by section 13–90–107(1)(g), C.R.S. 2011:

> A licensed psychologist ... shall not be examined without the consent of the [psychologist's] client as to any communication made by the client to the [psychologist] or the [psychologist's] advice given in the course of professional employment....

"The purpose of the psychologist-patient privilege is to enhance the effective diagnosis and treatment of illness by protecting the patient from the embarrassment and humiliation that might be caused by the psychologist's disclosure of information divulged by the client during the course of treatment." *People v. Sisneros,* 55 P.3d 797, 800 (Colo. 2002). While the same policy supports the physician-patient privilege, the supreme court has explained that the justification is even more compelling when applied to the relationship between a psychologist and his or her patient. *Id.*

█ The claimant of a privilege bears the burden of establishing its applicability. *People v. Pressley,* 804 P.2d 226, 227 (Colo. App.1990). Once the privilege attaches, "the psychologist-patient privilege protects testimonial disclosures as well as pretrial discovery of files or records derived or created in the course of the treatment." *Sisneros,* 55 P.3d at 800.

Here, defendant contends that A.S.'s session with the psychologist was not privileged because it was intended to determine the veracity of A.S.'s allegations concerning defendant rather than to treat A.S. Defendant relies upon two supreme court decisions, *Williams v. People,* 687 P.2d 950 (Colo.1984), and *B.B. v. People,* 785 P.2d 132 (Colo.1990), to support his contention.

In *Williams,* the supreme court refused to extend the psychologist-patient privilege to conversations the defendant had with a police officer not qualified to provide psychological therapy. 687 P.2d at 954. It is undisputed in this case that A.S. visited a trained psychologist, and therefore *Williams* does not apply here.

In *B.B.,* the trial court appointed a clinical psychologist to serve as an expert witness to assist a mother in defending against a petition for termination of her parental rights. 785 P.2d at 140. The supreme court held that the mother's statements made to the psychologist were not privileged because they were made for the purpose of preparing for litigation and not for diagnosis and treatment. *Id.* Here, there is no allegation that the purpose of A.S.'s session with the psychologist was to prepare the psychologist or A.S. to testify in the prior criminal proceedings against defendant. Rather, defense counsel argued to the trial court that the purpose of the session was "to find out if there was truth to the allegations" A.S. had made against defendant. Defendant has not explained how the psychologist could undertake such an effort without diagnosis of A.S.'s emotional and mental condition.

█ We therefore conclude that A.S.'s psychologist session falls within the ambit of the psychologist-patient privilege. This con-

clusion promotes the purpose of the privilege, which is to promote trust between a psychologist and his or her patient. The psychologist's ability to diagnose A.S. with respect to the allegations depended upon that relationship of trust in order to encourage candor on the part of A.S. in discussing highly sensitive and personally embarrassing matters. *See Sisneros,* 55 P.3d at 800; *People v. Dist. Court,* 719 P.2d 722, 726–27 (Colo. 1986). To hold that the session was not privileged would undermine the confidentiality and trust inherent in the psychologist-patient privilege.·

### 2. Waiver

■■■ Waiver of a right is a mixed question of fact and law that we review de novo. *See People v. Alengi,* 148 P.3d 154, 159 (Colo.2006) (waiver of right to counsel). However, when reviewing mixed questions of fact and law, we give deference to the district court's factual findings. *See People v. Garcia,* 11 P.3d 449, 453 (Colo.2000).

■■■ "To establish a waiver [of the psychologist-patient privilege], the defendant must show 'that the privilege holder, by words or conduct has expressly or impliedly forsaken his claim of confidentiality with respect to the information in question.'" *People v. Wittrein,* 221 P.3d 1076, 1083 (Colo. 2009) (quoting *Clark v. Dist. Court,* 668 P.2d 3, 8 (Colo.1983)).

■■■ As a general matter, parents can waive privileges held by their minor children. *See Pressley,* 804 P.2d at 228 (parents may waive child's privilege related to medical records); *see also Lindsey v. People,* 66 Colo. 343, 355, 181 P. 531, 536 (1919) ("the proper person to claim or waive the privilege as to a minor is the natural guardian of such minor—in this case his mother"). This authority extends to other individuals charged with acting on the child's behalf. *See Wittrein,* 221 P.3d at 1083 n. 4 (GAL assigned to determine if it was in the best interests of the child accuser to waive her privilege in sexual assault case); *People in Interest of L.A.N.,* 296 P.3d 126, 134 (Colo.App.2011) (holding that GAL had authority to waive child's privilege in dependency and neglect proceeding). No Colorado appellate case,

however, has addressed whether a parent may waive a privilege when a conflict exists between the interests and of the parent and a child.

Other jurisdictions have addressed this issue and concluded that a parent does not have the authority to waive a child's privilege when a conflict exists. *See, e.g., Attorney ad Litem v. Parents of D.K.,* 780 So.2d 301, 307 (Fla.Dist.Ct.App.2001) ("Where the parents are involved in litigation themselves over the best interests of the child, the parents may not either assert or waive the privilege on their child's behalf."); *Bond v. Bond,* 887 S.W.2d 558, 561 (Ky.Ct.App.1994) ("custodial parent may not ·invoke the psychotherapist-patient privilege for a child in custody litigation"); *Nagle v. Hooks,* 296 Md. 123, 460 A.2d 49, 51 (1983) (it is "patent that [parent involved in a custody battle] has a conflict of interest in acting on behalf of the child in asserting or waiving the privilege of nondisclosure," and, therefore, "the appointment of an attorney to act as the guardian of the child in the instant matter is required"); *In re Adoption of Diane,* 400 Mass. 196, 508 N.E.2d 837, 840 (1987) ("In a case such as this, where the parent and child may well have conflicting interests, and where the nature of the proceeding itself implies uncertainty concerning the parent's ability to further the child's best interests, it would be anomalous to allow the parent to exercise the privilege on the child's behalf."); *State ex rel. Wilfong v. Schaeperkoetter,* 933 S.W.2d 407, 409 (Mo.1996) (where the privilege is claimed on behalf of the parent rather than the child, and the welfare and interest of the child would not be protected by the parent, the parent should not be permitted to assert or waive the privilege); *In re Berg,* 152 N.H. 658, 886 A.2d 980, 988 (2005) (in divorce proceedings, trial court or GAL instead of father must determine if waiver of privilege as to psychologist's records is in child's best interest).

■■■ In *L.A.N.,* the division acknowledged that other jurisdictions do not allow a conflicted parent to determine whether a child's psychiatrist-patient privilege should be asserted or waived, 296 P.3d at 134, (cit-

ing *Berg*, 886 A.2d at 984–88), but the issue there did not require deciding whether Colorado courts should follow those jurisdictions. We now hold that the nature of a conflict between the interests of a parent and of his or her child may preclude the parent from waiving the child's psychologist-patient privilege. In so doing, we are not called upon to agree with the holdings in all of the cases cited above, which involve a variety of proceedings and differing degrees of conflict. We do, however, hold that the trial court in this case properly concluded, based on the nature of the proceedings at issue, the nature of the interests of B.L., and the extent of the conflict between B.L.'s interests and the interests of A.S., that B.L. lacked authority to waive A.S.'s privilege.

The trial court's conclusion is supported in two ways by substantial evidence in the record. First, B.L. was caught in the middle of a highly sensitive and inflammatory conflict. When she provided copies of the psychologist's report to defense counsel and the district attorney, her father, defendant, was formally charged with sexually abusing her daughter A.S. Thus, B.L.'s natural affection and affinity for her child and her father were in direct conflict. It could be difficult for a parent to place the interests of her child over her own interest in not having her father convicted of such a crime and incarcerated perhaps for life and in avoiding her own shame in such a conviction.

Second, the trial court found that B.L. was antagonistic to the prosecution. Given the defense's interest in presenting the psychologist's report to the jury, it appears that B.L. wanted to assist her father's defense. The trial court was also aware that B.L. did not believe the allegations made by her daughters A.S. and E.M. or the other two victims in this case. There was evidence that B.L. had instructed A.S. not to repeat her allegations to anyone else. Under these circumstances, an objective observer would necessarily conclude that B.L.'s motives for attempting to waive A.S.'s privilege were at least mixed and therefore not based solely on the interests of A.S.

Once the trial court decided that B.L. lacked authority to waive the privilege, the court asked the GAL whether she would waive it for A.S. The GAL, as noted above, declined. This procedure was consistent with *L.A.N.*, which held that a GAL has authority to waive the child's privilege. *Id.*

Accordingly, we conclude that the trial court properly declined to recognize B.L.'s attempted waiver of A.S.'s privilege with respect to A.S.'s session with the psychologist, that the communications related to that session remained privileged information, and that the trial court properly excluded all evidence regarding it.

## IV. Denial of Trial Continuance

█ "A trial court's decision to grant or deny a continuance is entitled to deference and may not be reversed on appeal absent a gross abuse of discretion." *People v. Cruthers*, 124 P.3d 887, 888 (Colo.App.2005).

█ "A trial court abuses its discretion in denying a motion to continue if, under the totality of the circumstances, its ruling is manifestly arbitrary, unreasonable, or unfair." *People v. Mandez*, 997 P.2d 1254, 1265 (Colo.App.1999). When deciding a motion to continue, the trial court must consider the peculiar circumstances of each case and balance the equities on both sides. *People v. Fleming*, 900 P.2d 19, 23 (Colo.1995). It must also consider the "prejudice to the moving party if the continuance is denied and whether that prejudice could be cured by a continuance, as well as the prejudice to the opposing party if the continuance is granted." *People in Interest of D.J.P.*, 785 P.2d 129, 132 (Colo.1990). A defendant must show that the denial of the continuance resulted in actual prejudice. *People v. Alley*, 232 P.3d 272, 274 (Colo.App.2010).

█ Three weeks before trial, defendant filed a motion for continuance. Defendant contends that the trial court abused its discretion in denying the motion because of the unavailability of a potential defense witness. Defendant claimed at trial that this witness would testify that A.S. told him that defendant had never touched her. Defendant further stated that the witness had a medical condition and that "the current trial schedule is difficult or nearly impossible" for him to

attend. The trial court denied defendant's motion.

After considering the totality of the circumstances, we conclude for several reasons that the trial court did not abuse its discretion by denying defendant's motion to continue the trial. First, the witness's testimony was of limited relevance. A.S. was not a named victim in this case and defendant does not allege that the witness could have provided evidence directly pertinent to the accusations of the three named victims. Second, defendant did not show that a continuance would prevent any prejudice because he could not establish a reasonable probability that the witness would ever be available to testify. Third, the trial court concluded that a continuance would be highly prejudicial to the prosecution, stating that "a further continuance will in all probability, upon the Court's personal observations, cause further consequences regarding [E.M.'s] ability to testify in the court." The trial court added, "[T]he duration of this case has caused manifest deterioration of material witnesses for the prosecution." Finally, the trial court found that defendant had not acted diligently because he had not endorsed or subpoenaed the witness.

Thus, the trial court's decision was not arbitrary, unreasonable, or unfair.

## V. Challenges for Cause

Defendant contends that the trial court erred by denying his challenges for cause to Jurors M, F, and R. We disagree.

### A. Law

■ "Where a trial court erroneously denies a challenge for cause and the defendant exhausts his or her peremptory challenges, reversal is required without any further showing of prejudice." *People v. Hancock*, 220 P.3d 1015, 1016 (Colo.App.2009) (citing *People v. Macrander*, 828 P.2d 234, 244 (Colo.1992)). Here, defendant exercised peremptory challenges in excusing the three prospective jurors and exhausted his remaining available peremptory challenges.

■ "[T]he standard for appellate review of a trial court's ruling on a challenge for cause is whether the trial court abused its discretion." *People v. Young*, 16 P.3d 821, 824 (Colo.2001) (citing *Carrillo v. People*, 974 P.2d 478, 485 (Colo.1999)). "The trial court is afforded broad discretion in ruling on whether to excuse a prospective juror for cause," and "such determinations often turn on assessments of the potential juror's demeanor, credibility, and sincerity." *Dunlap v. People*, 173 P.3d 1054, 1082 (Colo.2007). The trial court's ability to evaluate these factors is superior to that of a reviewing court, which has access only to a cold record. *Morrison v. People*, 19 P.3d 668, 672 (Colo. 2000).

■ "A trial court must grant a challenge for cause if a prospective juror is unwilling or unable to accept the basic principles of criminal law and to render a fair and impartial verdict based on the evidence admitted at trial and the court's instructions." *Hancock*, 220 P.3d at 1016 (citing *Morrison*, 19 P.3d at 672). The mere expression of some concern by a prospective juror regarding an aspect of a case should not result in automatic dismissal for cause. *People v. Shover*, 217 P.3d 901, 907 (Colo.App.2009). Consequently, the trial court's denial of a challenge for cause will be upheld "where the record contains a general statement by a juror that, despite any preconceived bias, he or she could follow the law and rely on the evidence at trial." *People v. Phillips*, 219 P.3d 798, 802 (Colo.App.2009). A juror's commitment to try to put his or her biases aside and expression of a belief that he or she can be fair has been deemed sufficient. *Shover*, 217 P.3d at 907. "A trial court is entitled to give considerable weight to the prospective juror's assurances that he or she can be fair and impartial." *Id.* at 907–08.

### B. Facts

#### 1. Juror M

Juror M stated in his juror questionnaire he had an ex-girlfriend who had been sexually assaulted by her stepfather. When questioned about how this experience would affect him, he stated that he was not "100 percent sure" that he could prevent it from influencing him, but he immediately added, "[I]f

called upon, I will do what is expected of me." When asked whether he could be fair and impartial and follow the court's instructions, Juror M replied, "I will certainly do the best I can with[in] my ability."

The court denied defendant's challenge, stating that, based on Juror M's manner and demeanor, it believed Juror M was "thoughtful, [had] taken instructions of the court seriously, indicated that he has a strong commitment to the system of justice and has a strong sense of duty, [and] that he will follow instructions."

### 2. Juror F

Juror F disclosed to the court that two daughters of a friend were victims of child abuse. When asked if she could be fair and impartial to both sides, she replied, "I would have a difficult time with this case, I think." She continued, "I would like to think I am fair and impartial, but I don't know for sure. I would try to be." When asked if she could hold the prosecution to its burden of proof, she replied, "I would like to think I can do that." The trial court then asked Juror F if she could find defendant not guilty if the prosecution failed to meet its burden of proof. Juror F responded, "I think I could."

In denying defendant's challenge to Juror F, the trial court found:

[S]he expressed clear willingness to listen to all of the evidence before making a final decision. Although in—not articulated in a technical fashion, that she will give full benefit to the defendant with regard to the presumption of innocence.

. . . .

. . . This juror can be fair and impartial based upon what I have observed.

### 3. Juror R

Juror R indicated on her juror questionnaire that she had read about the case in the local newspaper. When asked if reading about the case would influence her ability to be impartial, she responded, "I would like to think that I would listen to the evidence and base whatever opinion on that rather than the article . . . you can't always believe what you read in the newspaper."

When asked by defense counsel if she was concerned that the information in the newspaper article would influence her decision, she responded, "I don't think it would be a concern." She then later affirmed to the court that she would base her decision on what she heard in court and not on extraneous matters like the article.

The trial court denied the challenge to Juror R, stating, "[I am] impressed with the manner and demeanor, what I have observed." The court also found Juror R to be "a thoughtful person who will follow instructions of law of the court, and will not in any way prejudice the defendant."

### C. Analysis

Defendant asserts that Jurors M and F were similar to a potential juror in *People v. Luman*, 994 P.2d 432, 436 (Colo.App.1999). There, a division of this court determined that the potential juror's experiences with sexual assault and her inability to ensure that she could remain an impartial juror could not be overcome by a positive demeanor. *Id.* There are important differences between the potential juror in *Luman* and Jurors M and F, however. In *Luman*, the potential juror was a physiotherapist who treated sexual abuse victims, had a family history of sexual abuse, and, most importantly, had been a victim of sexual assault as a child. *Id.* at 435. The potential juror was unable to state that she would be fair, or that she would not have empathy for the victim. *Id.* at 435–36. In this case however, Jurors M and F were not victims of sexual assault and had far fewer experiences with victims of sexual assault. Therefore, *Luman* is not persuasive for purposes of this case, and the trial court acted within its discretion by commenting on and relying upon the potential jurors' positive demeanor. *See also Dunlap*, 173 P.3d at 1082.

■ With regard to all of the challenged jurors, the trial court acted within its discretion by relying on its own credibility determinations of them and on their assurances. *See Shover*, 217 P.3d at 907–08. The record contains statements from all three that support the trial court's decision not to remove them

for cause. Juror M stated he would do the best he could to remain impartial and follow the court's instructions. Juror F stated that she would listen to all the evidence before making a final decision and that she thought she could hold the prosecution to its burden of proof. Although Juror R initially expressed some concern regarding the effect the newspaper article would have on her ability to serve as a juror, she, too, ultimately assured the trial court that her final decision would be based on only the evidence presented at trial.

Therefore, the trial court did not err in denying defendant's challenges for cause of Jurors M, F, and R.

## VI. Testimony of Other Granddaughters

At trial, defendant sought to call two of his other granddaughters to testify that he had not sexually assaulted them. Defendant contends that the trial court erred by ruling that this proffered testimony would be admitted only as CRE 404(a) character evidence and would open the door to the prosecution's use of defendant's prior convictions. We are not persuaded.

### A. Law

■ "A trial court is granted substantial discretion to decide questions concerning the admissibility of evidence, including similar transaction evidence." *People v. Larson*, 97 P.3d 246, 249 (Colo.App.2004).

■ "In order to be admissible, evidence must be relevant...." *People v. Rath*, 44 P.3d 1033, 1038 (Colo.2002); *see* CRE 402. Relevant evidence is " 'evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' " *Rath*, 44 P.3d at 1038 (quoting CRE 401).

■ A defendant may present evidence of a pertinent character trait under CRE 404(a)(1). "A defendant's law-abiding character is a pertinent trait in any criminal prosecution." *People v. Goldfuss*, 98 P.3d 935, 937 (Colo.App.2004) (citing *People v. Miller*, 890 P.2d 84, 92 (Colo.1995)). However, unless the character trait sought to be

proved is an essential element of a charge, a defendant may not offer specific instances of his or her conduct. CRE 405(a); *see also United States v. Ellisor*, 522 F.3d 1255, 1270–71 (11th Cir.2008) (evidence of a defendant's legitimate business activities not admissible under Fed.R.Evid. 404 or 405 to negate evidence of fraudulent intent with respect to mail fraud charges in connection with a specific Christmas show); *United States v. Benedetto*, 571 F.2d 1246, 1249–50 (2d Cir.1978) (evidence that meat inspector charged with taking bribes from four meat packers did not solicit or take bribes from other meat packers not admissible under Fed.R.Evid. 405); *State v. Mahoney*, 188 N.J. 359, 908 A.2d 162, 170–71 (2006) (lawyer charged with stealing client funds properly barred, under New Jersey versions of CRE 404 and 405, from presenting evidence of his honesty and diligence in dealing with other clients). When a defendant's character witness testifies regarding a character trait, that testimony may be rebutted or impeached on cross-examination by inquiry into specific instances of conduct. CRE 405(a); *see People v. Dembry*, 91 P.3d 431, 434 (Colo. App.2003).

### B. Facts and Analysis

■ Defendant's argument to the trial court, in its entirety, was as follows:

[W]hat they would essentially be testifying to is that they had plenty of contact with their grandfather. Sat on his lap—or at the computer and went to the movies and a variety of other things like that, and that they were never touched by their grandfather. *This is to rebut the opportunity argument of the 404(b) evidence* [presented by the prosecution through A.S.]. *It's not for character.*

(emphasis added). The court found the testimony not relevant but stated that it would allow the testimony to be admitted as CRE 404(a) character evidence. The court then cautioned defendant that the admission of the evidence would open the door to defendant's prior criminal convictions, one of which was for sexual assault. Defendant did not call the other granddaughters.

On appeal, defendant again argues that the evidence was not character evidence, but was relevant evidence to rebut the testimony of A.S.

Therefore, we must first look at the purpose of A.S.'s testimony.

The trial court instructed the jury that A.S.'s testimony was to be considered only for purposes of "establishing a common plan, design or scheme, establishing a modus operandi or MO, and lack of mistake or accident." Thus, A.S.'s testimony was not presented to prove "opportunity," which was the only issue for which the other granddaughters' testimony was proffered. At the close of trial, the court repeated its instruction that A.S.'s testimony could be used only for the purposes stated. We assume that the jury followed the trial court's instructions. *See Armentrout v. FMC Corp.*, 842 P.2d 175, 187 (Colo.1992).

Defendant also contends that the other granddaughters' testimony was relevant because it would have shown that defendant did not follow his modus operandi when given an opportunity to do so with these granddaughters. The alleged fact that defendant did not sexually assault the other granddaughters does not make it less probable that he followed a common plan or modus operandi when he sexually assaulted the three victims. Although the other granddaughters allegedly spent some time in his company, the offer of proof was not sufficient to determine whether defendant had the same opportunity with them that he had with the three victims. For example, defendant's proffer did not indicate how much time he spent with the other granddaughters, as compared to his time with the victims, or whether he was ever alone with either of the other granddaughters. Defendant has also failed to cite any authority, and we are aware of none, supporting his theory of admissibility. Therefore, we conclude that the trial court did not abuse its discretion in finding that the proffered testimony of the other granddaughters was not relevant to whether defendant assaulted the three victims.

The court nonetheless offered to admit the evidence under CRE 404(a)(1) regarding the propensity of defendant to commit the alleged acts. The trial court correctly then warned that if defendant presented the other granddaughters' testimony as CRE 404(a) evidence, the prosecution could rebut or impeach their testimony on cross-examination using defendant's previous convictions. *See* CRE 404(a)(1), 405(a). Defense counsel recognized this principle by conceding, before the trial court even ruled, that reception of this testimony as character evidence would "open[ ] the door." Clearly, defendant's prior convictions would be relevant to rebut the proffered evidence that defendant had a law-abiding character, and the prior sexual assault conviction would be relevant to rebut any other trait tending to prove that he does not commit sexual assault. *See* CRE 405(a); *Dembry*, 91 P.3d at 434 (a witness testifying to the good character of a defendant may be asked if he or she knew the defendant had been arrested for a crime).

Therefore, the trial court did not err by advising that the admission of the other granddaughters' testimony under CRE 404(a) would open the door to admission of evidence concerning defendant's previous convictions.

## VII. Limitations on Cross–Examination

Defendant challenges the trial court's limiting of his cross-examination of C.S.'s mother, R.K., and S.O.'s mother, C.O. We are not persuaded.

### A. Law

We review the trial court's limiting of a defendant's cross-examination for abuse of discretion. *Merritt v. People*, 842 P.2d 162, 166 (Colo.1992). A trial court's discretionary ruling will not be overturned unless it is manifestly arbitrary, unreasonable, or unfair. *Kinney v. People*, 187 P.3d 548, 558 (Colo.2008).

"The right of a defendant to confront adverse witnesses is guaranteed by the Sixth and Fourteenth Amendments and includes an opportunity for effective cross-examination." *People v. Herrera*, 87 P.3d 240,

253 (Colo.App.2003) (citing *Olden v. Kentucky*, 488 U.S. 227, 231, 109 S.Ct. 480, 102 L.Ed.2d 513 (1988)); *see Kinney*, 187 P.3d at 558–59. "However, an accused's right to confront and to cross-examine witnesses is not absolute and may be limited 'to accommodate other legitimate interests in the criminal trial process....'" *People v. Cole*, 654 P.2d 830, 833 (Colo.1982) (quoting *Chambers v. Mississippi*, 410 U.S. 284, 295, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973)). "Thus, a trial court has wide latitude, insofar as the Confrontation Clause is concerned, to place reasonable limits on cross-examination based on concerns about, for example, harassment, prejudice, confusion of the issues, the witness'[s] safety, or interrogation which is repetitive or only marginally relevant." *Merritt*, 842 P.2d at 166; *see also Kinney*, 187 P.3d at 559. "The trial court must exercise its discretion to preclude inquiries that have no probative value, are irrelevant, or are prejudicial." *People v. Hendrickson*, 45 P.3d 786, 788 (Colo.App.2001).

■ "The focus in terms of constitutional error analysis is not the effect of the alleged error on the outcome of trial, but on the individual witness." *Merritt*, 842 P.2d at 166. "The error is prejudicial when a reasonable jury would have had a 'significantly different impression' of the witness's credibility had the defendant been allowed to pursue the desired cross-examination." *Kinney*, 187 P.3d at 559 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 680, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)).

### B. Facts and Analysis

■ At trial, defendant's theory was that his granddaughters fabricated the sexual assault allegations. Defendant sought to advance this theory through his cross-examination of both R.K. and C.O. Defendant sought to ask R.K. about his refusal to lend R.K.'s husband tools for use in a business. Defendant alleges that this evidence would have shown that R.K. was angry with defendant, and therefore had a motive to encourage her daughter, C.S.,[5] to fabricate her allegations.

Defendant then sought to question C.O. about R.K.'s relationship with C.S. Defendant alleges that this testimony would have shown that R.K. gave more attention to her son, C.S.'s brother, than to C.S., thereby giving C.S. an incentive to follow R.K.'s request to falsely accuse defendant.

The prosecution objected to both lines of questioning, and the trial court sustained both objections. In limiting the cross-examination of R.K., the court stated:

> That is so attenuated with respect to influencing the child, and there is no[ ] indication whatsoever that this witness has in any way influenced the child's testimony. It is so attenuated, it is irrelevant.

> I will grant you some—some significant leeway in cross-examination if, in fact, there is a basis for a motive, but this is—this is completely attenuated, and does not establish a basis or motive to—for her to speak to the child to lie, and to make [up] the allegations.

> And, additionally, there has been absolutely no indication whatsoever to link up what you are making the offer of proof for with the child's testimony. The Court finds and concludes that this examination is irrelevant.

> Moreover, the Court, in balancing the probative value of the evidence, which is extraordinarily slight, with the potential for confusion of the facts before the jury, misleading the finder of fact, and unfair prejudice to the Prosecution, [finds] that the danger of misleading the jury, delay, waste of time, presentation of evidence that is tangentially involved in this case, outweighs what slight probative value the evidence has.

> So the Court—since the evidence is being offered to show her motive to influence her daughter, the Court finds that the evidence is irrelevant. The objection is sustained.

In upholding the objection to the questioning of C.O., the court stated, "It is not relevant whatsoever."

---

5. Defendant's opening brief refers to C.S., while the People's answer brief refers to A.S. Our understanding of the context of defendant's argument and review of the record confirms that the proper reference is to C.S.

We conclude that the trial court did not abuse its discretion in limiting defendant's cross-examination of R.K. and C.O. We agree with the trial court's determination that the evidence offered by defendant was, at best, of minimal probative value. The trial court applied the balancing test set forth in CRE 403 and concluded that the potential negative consequences that could arise if the evidence were admitted outweighed whatever slight probative value the evidence might have. Thus, the trial court's decision was not manifestly arbitrary, unreasonable, or unfair and was not an abuse of its discretion.

## VIII. Forensic Interviewers' Testimony

■ Defendant contends that the trial court erred by allowing two forensic interviewers to offer testimony that constituted expert testimony and improperly vouched for the granddaughters they interviewed. We disagree.

### A. Facts

Jennifer Martin and Michelle Peterson are forensic interviewers. Prior to trial, Ms. Martin had interviewed E.M. and A.S., and Ms. Peterson had interviewed C.S and S.O. These interviews were recorded, and, at trial, the court admitted, without objection, video recordings and transcripts of all four interviews. Ms. Martin and Ms. Peterson testified concerning their experience as interviewers and how they conduct forensic interviews, laid the foundation for the admission of the videos and transcripts, and discussed the interviews after the videos were played for the jury. Neither of these witnesses was offered or qualified as an expert.

### B. Analysis

#### 1. Lay Opinion Testimony

■ We review the admission of opinion testimony by a lay person for abuse of discretion. *People v. Veren*, 140 P.3d 131, 136 (Colo.App.2005).

■ CRE 701 provides that a lay witness's "testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness'[s] testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." A lay opinion is proper when it "results from a process of reasoning familiar in everyday life." *Veren*, 140 P.3d at 137.

■ A witness may be qualified as an expert in the area of interviewing techniques. *See Tevlin v. People*, 715 P.2d 338, 339 (Colo.1986) (noting that the trial court qualified the social worker as an expert in the field of child abuse investigation). The testimony of the forensic interviewers in this case, however, is similar to the testimony held to constitute proper lay testimony in *People v. Tillery*, 231 P.3d 36 (Colo.App. 2009) *cert. granted on other grounds* 2010 WL 2026599 (May, 24, 2010). In *Tillery*, a forensic interviewer testified regarding, among other things, her qualifications, training, and techniques for interviewing children. *Id.* at 42. The division there stated:

> The interviewer's qualifications, training, and interview protocols and techniques do not constitute opinion testimony. Certain basic information about a subject may fall within the scope of lay opinion testimony, even if more detailed discussion of the same area would require specialized knowledge.

*Id.*

We agree with this analysis and conclude that the testimony of the interviewers in this case bears strong similarity to that of the forensic interviewer in *Tillery*. Ms. Martin and Ms. Peterson also testified about their qualifications, experience, and training as forensic interviewers and their protocols and techniques, and provided some basic information about interviewing children concerning possible sexual abuse. Their testimony was brief and did not involve any detailed discussion or opinions about the interviewees or defendant.

We therefore conclude that the trial court did not abuse its discretion in admitting this testimony as lay opinion testimony pursuant to CRE 701.

### 2. Improper Vouching

A witness may not "give opinion testimony with respect to whether a witness is telling the truth on a specific occasion." *People v. Koon*, 713 P.2d 410, 412 (Colo.App. 1985). We review a trial court's ruling regarding the scope of opinion testimony for an abuse of discretion. *See Robinson v. People*, 927 P.2d 381, 384 (Colo.1996).

An opinion concerning the credibility of a victim is admissible if that testimony relates to general characteristics only. *Tillery*, 231 P.3d at 42 (citing *People v. Gillispie*, 767 P.2d 778, 780 (Colo.App.1988)). For example, in *Tillery*, a forensic interviewer testified that she explained the rules of the interview to the interviewee, including that the interviewee had to tell the truth, and told the interviewee that one "answer does not make sense." 231 P.3d at 42. The division held that those statements did not express an opinion concerning the interviewee's truthfulness or sincerity. *Id.*

Here, Ms. Peterson explained the goals of a forensic interview in general and did not speak to the truthfulness of the answers given by any specific interviewee. Similarly, Ms. Martin did not express an opinion about the truthfulness of either of the children she interviewed, but instead expressed her opinion about the goals of forensic interviews and techniques she employs. We conclude that the trial court did not abuse its discretion in admitting such testimony.

Ms. Peterson also testified, "Forensic means fact finding[6] so I'm determining if anything happened. And if something happened, I get the facts and details around it." In reaction to the language concerning fact finding by the interviewer, defendant objected on the ground that the testimony invaded "the province of the jury." The trial court overruled the objection, finding that the testimony "does not invade the province of the jury." To avoid any possible confusion, the court immediately, and without any request by defendant, instructed the jury:

> [Y]ou are the ultimate and sole determiners of the facts of this case. You are not bound by the testimony of any witness. You will be instructed at the conclusion of this case as to what your responsibilities will be in terms of the fact-finding process. However, the fact-finding process is exclusively yours. And you will be the only arbiters of what has and has not been proven in the case.

Jurors are presumed to follow instructions given to them by the trial court. *See Armentrout*, 842 P.2d at 187. This instruction therefore removed any confusion the testimony may have created. In any event, Ms. Peterson's testimony did not include any fact finding or determination concerning the children she interviewed.

Accordingly, the trial court did not abuse its discretion because the forensic interviewers did not vouch for the credibility of the victims.

### IX. Judicial Notice of Previous Proceeding

Defendant contends that the trial court erred by ruling that if it took judicial notice of the dismissal of the criminal case involving A.S., it would open the door to admission of evidence of defendant's previous convictions. We disagree.

Generally, a trial court has discretion to take judicial notice of an adjudicative fact. CRE 201(c); *see Martinez v. Reg'l Transp. Dist.*, 832 P.2d 1060, 1061 (Colo.App. 1992). "[F]or a court to be required to take judicial notice upon the request of a party, it must, of necessity, be supplied with the specific information that is the subject of the request." *Durbin v. Bonanza Corp.*, 716 P.2d 1124, 1129 (Colo.App.1986); *see* CRE 201(d).

When evidence of prior criminal charges against a defendant is introduced at trial, the trial court may instruct the jury that the defendant was acquitted or permit evidence of the acquittal. *See Kinney*, 187 P.3d at 557. Trial courts must make their

---

**6.** While it is not clear from the record whether Ms. Peterson's definition of "forensic" is correct within the field of forensic interviewing, defendant did not object to the definition in the trial court and has not questioned its accuracy on appeal.

determinations on a case-by-case basis; "there is not a per se rule either always requiring an instruction or always ruling such evidence inadmissible." *Id.* "An acquittal instruction is appropriate when the testimony or evidence presented at trial about the prior act indicates that the jury has likely learned or concluded that the defendant was tried for the prior act and may be speculating as to the defendant's guilt or innocence in that prior trial." *Id.* Appellate courts review a trial court's determination on this issue for an abuse of discretion. *Id.*

We conclude for two reasons that the trial court did not abuse its discretion in its ruling regarding defendant's request for taking judicial notice. First, defendant did not provide the trial court with any documentation supporting the dismissal. He accordingly failed to comply with the requirements of CRE 201(d), and the trial court could have declined to take judicial notice on that ground alone. *See Durbin,* 716 P.2d at 1129.

Second, although the prosecution presented evidence that charges had been filed against defendant concerning A.S., the jury also heard testimony from the same witness that these charges were dismissed. Thus, the jury was not left to speculate whether defendant was convicted of sexually assaulting A.S. *See Kinney,* 187 P.3d at 557.

We therefore cannot say that the trial court's ruling regarding defendant's request to take judicial notice of the dismissal of the charges concerning A.S. amounted to an abuse of discretion.

### X. Cumulative Error

Defendant contends that his conviction should be reversed because of the cumulative effect of the alleged errors in this case. We disagree.

 "The doctrine of cumulative error requires that numerous errors be committed, not merely alleged." *People v. Rivers,* 727 P.2d 394, 401 (Colo.App.1986). Here, we have found no error, and therefore defendant was not deprived of a fair trial.

\* Webb, J., would grant.

Defendant's judgment of conviction is affirmed.

Judge TAUBMAN and Judge TERRY concur.