2017 CO 10M

**Anthony Edwin MARSH, Petitioner,**

**v.**

**The PEOPLE of the State of Colorado, Respondent.**

**Supreme Court Case No. 12SC102**

Supreme Court of Colorado.

February 6, 2017

As Modified on Denial of Rehearing February 27, 2017

Attorneys for Petitioner: Douglas K. Wilson, Public Defender, Anne T. Amicarella, Deputy Public Defender, Denver, Colorado

Attorneys for Respondent: Cynthia H. Coffman, Attorney General, John T. Lee, Assistant Attorney General, Denver, Colorado

JUSTICE BOATRIGHT announced the judgment of the Court.

¶1 A jury convicted petitioner Anthony Edwin Marsh of sexually assaulting three of his granddaughters and possessing more than twenty images depicting child pornography. Marsh appealed, and the court of appeals affirmed his conviction. Marsh v. People, —— P.3d ——, No. 08CA1884, 2011 WL 6425492 (Colo. App. Dec. 22, 2011). We granted certiorari to consider whether the presence of temporary internet cache files stored on a person's hard drive can constitute evidence of "knowing possession" as used in Colorado's child pornography statute, section 18–6–403, C.R.S. (2016). We also address the admissibility of the testimony of two forensic interviewers.[1]

---

1. Specifically, we granted certiorari to review the following issues:
    1. Whether images automatically stored by a computer in its Internet cache are suffi-
cient, without additional evidence of a defendant's awareness of the cache or evidence of a defendant's affirmative conduct such as downloading or saving such im-

¶2 We first hold that when a computer user seeks out and views child pornography on the internet, he possesses the images he views. Since the evidence presented at trial established that Marsh's cache contained images that a computer user had previously viewed on the web browser, we conclude that the internet cache images qualified as relevant evidence that Marsh had previously viewed, and thus possessed, those images. Therefore, when considered as a whole and in the light most favorable to the People, the evidence was sufficient to support the jury's conclusion that Marsh possessed more than twenty images depicting child pornography. Second, we hold that even if the trial court improperly admitted the forensic interviewers' testimony as lay opinion, the error was harmless. Therefore, we affirm the court of appeals' judgment in its entirety.

## I. Facts and Procedural History

¶3 Marsh allegedly sexually assaulted three of his granddaughters, C.S., E.M., and S.O., between 2005 and 2007. The children ranged in age from four to seven years old at the time of the alleged assaults. Two forensic interviewers from Blue Sky Bridge Advocacy Center ("Blue Sky") interviewed each of the three granddaughters, as well as a fourth granddaughter, A.S., who was fifteen years old at the time of the trial in 2008.[2] The two interviewers and four granddaughters all testified at trial, and the jury watched a video recording of each forensic interview. During those interviews, the children's accounts of the alleged assaults varied from their testimony at trial in certain respects, including when and how many times the assault hap-

pened and what the assault entailed. The children also gave some conflicting information during their interviews. Each granddaughter consistently testified, however, that Marsh touched her "between the legs," sometimes while viewing pornography on a desktop computer that he had in his basement.

¶4 The four granddaughters also testified that they, Marsh, and one of Marsh's daughters all used the computer. The children testified that the computer had pornographic images on it, some involving adults and some involving children. They said that they accessed the computer when Marsh was not present and located pornographic images that he had saved on it. They also claimed to have found child pornography websites on Marsh's internet "Favorites" toolbar. During her forensic interview, A.S. stated that she attempted to delete some of the pornographic images that she found.

¶5 At trial, the forensic interviewers testified about their backgrounds and training and about the goals and methods of conducting forensic interviews. Jennifer Martin, who interviewed A.S. and E.M., testified that she had attended sixteen trainings on forensic interviews and had interviewed approximately 2,000 children. She also explained the difference between forensic interviews and regular interviews. Martin stated that her initial goal in conducting forensic interviews is to make children feel comfortable talking about "things that may have happened to them"; if something has happened, then the goal becomes to obtain detailed information. In particular, Martin said that she conducts forensic interviews of child sex assault victims

---

ages, to establish "knowing possession" under section 18-6-403, C.R.S. (2016).
   2. Whether the court of appeals erred when it held that the testimony of a child forensic interviewer was lay opinion testimony and therefore was not subject to the admissibility and discovery requirements for expert witnesses.
We issue this opinion in conjunction with Venalonzo v. People, 2017 CO 9, 388 P.3d 868, because both cases address the proper scope of forensic interviewers' testimony in child sex assault cases. In that case, we granted certiorari to review the following issues:
   1. Whether the court of appeals erred when it held that the testimony of a child forensic interviewer was lay opinion testimony and

therefore was not subject to the admissibility and discovery requirements for expert witnesses.
   2. Whether the court of appeals erred and departed from the longstanding rule against testimony that a witness is telling the truth on a specific occasion by permitting testimony about the credibility of the child accusers in this case.

2. A.S. alleged in a different case that Marsh had abused her in 2002. Those charges were dismissed; however, A.S. testified in this case to establish Marsh's common plan, modus operandi, and lack of mistake in the assaults that are the subject of this case.

according to national guidelines that entail starting the interview with broad or open-ended questions and gradually getting more specific. She also noted that this approach entails avoiding leading questions entirely.

¶6 The second interviewer, Michelle Peterson, interviewed C.S. and S.O. She testified that she conducted nine to ten forensic interviews per week and that she had been employed with Blue Sky for nine years. Like Martin, Peterson also explained the difference between forensic interviews and other types of interviews. She testified that police or social workers first conduct a short interview and then bring in a forensic interviewer if they believe it is possible that a crime occurred.

¶7 Marsh objected to both interviewers' testimony on the grounds that it was expert testimony. The trial court overruled the objections, finding that the interviewers provided no expert opinions and that their testimony provided "background information as to [interviewing] techniques."

¶8 A computer forensic expert also testified at trial about Marsh's possession of child pornography. The expert testified that he examined Marsh's computer and recovered a series of pornographic images depicting children. The series of images included one image from the "My Pictures" folder, seven deleted files,[3] thirty-eight thumbnail database files (i.e., files that contain smaller versions of image files that have been previously opened on the computer), and seventeen internet cache files. The image from the My Pictures folder and the seven deleted images were attributable to the relevant time period between January 1, 2007, and May 16, 2007. The thirty-eight original files that corresponded to the images depicted in the thumbnail database files had been deleted from the hard drive prior to the examination of Marsh's computer, and the expert could not determine when the original files had been opened or deleted.

¶9 As for the seventeen internet cache files, evidence at trial established that an internet cache is a temporary file that contains images automatically stored on the computer's hard drive after a computer user views them on a website. If the website is accessed at a later time, the computer recalls the images from the cache rather than downloading them from the internet again, which allows the website to load more quickly. The expert testified that computer users typically do not know that images they view on websites are being saved to their computer's hard drive. Three of the cache images were identical to three of the deleted images.

¶10 The jury found Marsh guilty of three counts of sexual assault on a child, three counts of sexual assault on a child—position of trust, and two counts of sexual assault on a child—pattern of abuse. §§ 18-3-405(1), (2)(d); 18-3-405.3(1), (2)(a), C.R.S. (2016). The jury also found Marsh guilty of sexual exploitation of children (possessing material) (possessing more than twenty sexually exploitative items), and inducement of child prostitution. §§ 18-6-403(3)(b.5), (5)(b)(II); 18-7-405.5, C.R.S. (2016).

¶11 Marsh raised several issues in the court of appeals; we address the two arguments that pertain to the issues on which we granted certiorari. First, he argued that the evidence was not sufficient to establish that he knowingly possessed more than twenty images depicting child pornography. Second, he argued that the trial court erred in permitting the forensic interviewers to offer expert testimony in the guise of lay opinion. The court of appeals affirmed his convictions in a unanimous, published opinion. Marsh, 2011 WL 6425492, at *1.

¶12 As to the first issue, the court of appeals held that sufficient evidence supported Marsh's conviction for knowing possession of child pornography. Id. at *3. The court held that "for purposes of section 18-6-403, 'possession' means the non-exclusive control or dominion over sexually exploitative material, and the statute requires that any such control or dominion be carried out knowingly." Id. at *4. Reasoning that "[w]hen [an] image is viewed, the user possesses and

---

**3.** The expert and the court of appeals referred to these files as "lost files." At trial, the expert defined "lost files" as "deleted files [for] which you lose reference to" a containing folder, which makes it impossible to identify "where [those files were] stored on the computer."

controls it in the sense that he or she has the ability to enlarge, save, copy, forward, or print the image," the court of appeals held that internet cache images "can constitute evidence of a prior act of possession." Id. at *5. Because Marsh did not contest that he possessed the seven deleted images or the single image in the My Pictures file, the court of appeals held that the combination of those eight images and the seventeen internet cache images was sufficient to prove possession of more than twenty images. Id. at *6.[4] The court then concluded that those images—combined with the facts that (1) Marsh owned the computer and exercised control over the computer and its environs, (2) Marsh's granddaughters testified that he viewed sexually exploitative material on his computer, (3) the forensic computer expert also recovered the sexually exploitative thumbnail database images from Marsh's computer, and (4) three of the cache images were identical to three deleted images—were sufficient for the jury to infer that Marsh knowingly viewed and possessed over twenty sexually exploitative images. Id.

¶13 Second, the court of appeals addressed the forensic interviewers' testimony about their qualifications and protocols. Relying on People v. Tillery, 231 P.3d 36 (Colo. App. 2009), aff'd on other grounds sub nom. People v. Simon, 266 P.3d 1099 (Colo. 2011), it held that the trial court did not abuse its discretion in admitting the forensic interviewers' testimony because it was proper lay witness testimony within the scope of Colorado Rule of Evidence ("CRE") 701. Marsh, 2011 WL 6425492, at *18. The court of appeals noted that the interviewers testified about their qualifications, experience, training, protocols, and techniques, and "provided some basic information about interviewing children concerning possible sexual abuse." Id. The court held that this fell within the scope of lay opinion testimony. Id.

¶14 Marsh petitioned for review on these two issues, and we granted certiorari. We now affirm the court of appeals.

## II. Analysis

¶15 First, we consider whether the evidence in this case was sufficient to support Marsh's conviction for possession of more than twenty sexually exploitative images under section 18–6–403(5)(b)(II). In essence, Marsh asserts that he did not possess the images that appeared on his screen during online viewing because he did not download or save them. Additionally, he contends that because he did not know that the images in the cache were on his hard drive, he could not have knowingly possessed them. We therefore examine the meaning of the term "possession" as used in the child pornography statute and consider whether internet cache images can constitute evidence that a defendant knowingly possessed those images. Second, we consider Marsh's complaint that the forensic interviewers were allowed to testify as experts without being properly endorsed. To do so, we address the preliminary question of whether admission of this testimony harmed Marsh.

¶16 First, we hold that when a computer user seeks out and views child pornography on the internet, he possesses the images he views. Since the evidence presented at trial established that Marsh's cache contained images that a computer user had previously viewed on the web browser, we conclude that the internet cache images qualified as relevant evidence that Marsh had previously viewed, and thus possessed, those images. Therefore, when considered as a whole and in the light most favorable to the People, the evidence was sufficient to support the jury's conclusion that Marsh possessed more than twenty images depicting child pornography. Second, we hold that even if the trial court improperly admitted the forensic interviewers' testimony as lay opinion, the error was harmless.

### A. Knowing Possession of Internet Cache Images

¶17 Marsh argues that the evidence was insufficient to support his conviction for possession of more than twenty images depicting child pornography under section 18–6–

---

4. For this reason, the court of appeals did not consider the thirty-eight thumbnail database files, whose creation date the expert could not verify. Marsh, 2011 WL 6425492, at *3.

403(5)(b)(II) because the People could prove neither that he was aware of the images in his computer's internet cache nor that he had exercised dominion or control over those images. Therefore, he argues, the People's evidence was insufficient to prove that he knowingly possessed more than twenty sexually exploitative images. Essentially, Marsh interprets the statute's "possession or control" language to encompass acts like downloading images to a hard drive but not to merely viewing them online.

¶18 We have not yet addressed how Colorado's child pornography statute applies to images viewed only online. Thus, we first analyze the term "possession" as it is used in section 18–6–403. We then examine the evidentiary significance of the images in the internet cache. Finally, we consider whether the evidence in this case was sufficient for the jury to find Marsh guilty of knowingly possessing more than twenty sexually exploitative images.

### 1. Standard of Review

¶19 We review issues of statutory construction de novo. Simon 266 P.3d at 1106. We also review sufficiency of the evidence claims de novo. Dempsey v. People, 117 P.3d 800, 807 (Colo. 2005).

### 2. "Possession" Under Section 18–6–403(3)

¶20 "The primary goal in statutory interpretation is to ascertain and effectuate the General Assembly's intent, and we begin this task by examining the plain meaning of the statutory language." Platt v. People, 201 P.3d 545, 551 (Colo. 2009). If the language is clear and unambiguous, we must interpret the statute according to its plain meaning. Hernandez v. People, 176 P.3d 746, 751 (Colo. 2008). Only if the language is ambiguous do we look to intrinsic or extrinsic aids. Id.

¶21 Marsh was convicted of sexual exploitation of a child by knowingly possessing more than twenty sexually exploitative images under sections 18–6–403(3)(b.5) and 18–6–403(5)(b)(II). Section 18–6–403(3)(b.5) provides that "[a] person commits sexual exploitation of a child if … he or she knowingly … [p]ossesses or controls any sexually exploitative material for any purpose." While possession of sexually exploitative material is normally a class 5 felony, section 18–6–403(5)(b)(II) increases it to a class 4 felony when the offender possesses "more than twenty different items qualifying as sexually exploitative material."[5]

¶22 Here, we must decide whether viewing child pornography without any evidence of affirmative action to save or download an image and without knowledge of the computer's automatic caching function constitutes possessing or controlling that image within the meaning of section 18–6–403(3). Because the statute criminalizes possession or control of child pornography, we assume that the General Assembly intended those words to have two distinct meanings. See Robinson v. Colo. State Lottery Div., 179 P.3d 998, 1010 (Colo. 2008). But because the common meaning of possession often includes the term "control," and because possession has a number of definitions, the statute's plain language is unclear.[6]

¶23 The General Assembly did not define the term "possession" in the child pornogra-

---

**5.** At the time Marsh was convicted of the offense, possession of sexually exploitative material was a class 6 felony. § 18–6–403(5)(b), C.R.S. (2008). In 2015, the General Assembly increased the offense to a class 5 felony. See H.B. 15-1341, 70th Gen. Assemb., Reg. Sess. (Colo. June 4, 2015). At all times, however, possession of more than twenty items increased the offense to a class 4 felony.

**6.** Black's Law Dictionary's definitions of "possession" include "[t]he fact of having or holding property in one's power; the exercise of dominion over property," "[t]he right under which one may exercise control over something to the exclusion of all others," "[t]he detention or use of a physical thing with the intent to hold it as one's own," and "[s]omething that a person owns or controls." Possession, Black's Law Dictionary 1281–82 (9th ed. 2009). Other sources define possession as "the act or condition of having in or taking into one's control." Possession, Webster's Third New International Dictionary 1770 (2002); accord United States v. Tucker, 305 F.3d 1193, 1204 (10th Cir. 2002). Legal possession can take myriad forms, including constructive possession, meaning the "[c]ontrol or dominion over a property without actual possession or custody of it." Constructive possession, Black's Law Dictionary 1282.

phy statute, nor has this court ever determined its meaning as used in this statute. To the extent we have considered the meaning of "possession" elsewhere, we have done so in the context of tangible items. See, e.g., Patton v. People, 35 P.3d 124, 131 (Colo. 2001) (concluding that possession of an illegal drug requires immediate and knowing control); People v. Garcia, 197 Colo. 550, 595 P.2d 228, 231 (1979) (concluding that possession of a firearm means actual or physical control). The concept of possession in the context of the internet, on the other hand, is unsettled because of evolving technology and the reality that computer users are often unaware of a computer's various unseen functions. Cf. ClearCorrect Operating, LLC v. Int'l Trade Comm'n, 819 F.3d 1334, 1339 (Fed. Cir. 2016) (Newman, J., dissenting) ("[S]tatutory law should be adapted to its legislative purpose, in the context of advances in technology."). As relevant here, evidence at Marsh's trial established that after a computer user views images online the cache function automatically stores those images on the computer's hard drive in order to enhance the computer's performance in the event that the user revisits the same page. This function is enabled without any action by the computer user.

¶24 Because analyzing the plain language of section 18-6-403(3) does not resolve the meaning of possession in the context of online child pornography, we look elsewhere to determine its definition. Relevant factors include the problem that the legislation is meant to address, the consequences of a particular construction of the legislation, and the legislative declaration or purpose. See § 2-4-203(1), C.R.S. (2016); Rowe v. People, 856 P.2d 486, 489 (Colo. 1993). Here, the General Assembly's legislative declaration is telling. In it, the General Assembly asserts that to protect children from sexual exploitation, "it is necessary to prohibit the production of material which involves or is derived from such exploitation and to exclude all such material from the channels of trade and commerce." § 18-6-403(1). It further provides that both possessing and viewing such material is harmful to children, declaring:

> that the mere possession or control of any sexually exploitative material results in continuing victimization of our children by the fact that such material is a permanent record of an act ... of sexual abuse of a child; that each time such material is shown or viewed, the child is harmed; ... that laws banning the production and distribution of such material are insufficient to halt this abuse; that in order to stop the sexual exploitation and abuse of our children, it is necessary for the state to ban the possession of any sexually exploitative materials.

§ 18-6-403(1.5) (emphasis added). This declaration emphasizes that the harm in possessing child pornography recurs every time someone views it. As such, we conclude that the statute criminalizes knowingly viewing online child pornography.

¶25 This approach finds support in other jurisdictions. For example, in United States v. Ramos, 685 F.3d 120, 131–32 (2d Cir. 2012), the Second Circuit explained that "[e]ven without saving them," a computer user possesses illegal pornographic images because online viewing provides for control over the images:

> [H]e could view them on the screen, he could leave them on his screen for as long as he kept his computer on, he could copy them to an email and send them to someone, he could print them, and he could ... move the images from a cached file to other files and then view or manipulate them off-line.

See also New v. State, 327 Ga.App. 87, 755 S.E.2d 568, 575 (2014) (holding that a computer user looking at child pornography on a website "gains actual control over the images, just as a person who intentionally browses child pornography in a print magazine 'knowingly possesses' those images, even if he later puts the magazine down"). In Ramos, there was evidence that the defendant had visited child pornography websites, viewed images of child pornography, and attempted to delete his browsing history. 685 F.3d at 125. The court held that the evidence was sufficient to prove that the defendant was guilty of knowingly receiving and possessing child pornography. Id. at 134.[7]

¶26 Marsh asks us instead to limit the definition of possession to include only those instances where the defendant has saved images onto a computer or tangible drive. Cf. United States v. Romm, 455 F.3d 990, 1000 (9th Cir. 2006) (holding that the defendant must know that internet cache images are stored on a hard drive in his possession to possess those images); United States v. Tucker, 305 F.3d 1193, 1203–04 (10th Cir. 2002) (holding that the defendant possessed images in an internet cache because he knew that his internet browser automatically stored the images that he viewed online). While proponents of this approach acknowledge that viewing child pornography online without downloading images exploits children, they conclude that a statutory prohibition against "possession" cannot encompass mere online viewing. See Commonwealth v. Diodoro, 932 A.2d 172, 176 (Pa. Super. 2007) (Klein, J., dissenting) (arguing that viewing is not possessing, and stating that "[i]f the legislature fails to keep up with modern technology, it is not our responsibility to correct its oversight").

¶27 We reject this limitation. To hold that viewing child pornography online does not constitute possession would ignore today's technological realities and the purpose of the statute. When section 18–6–403(3)(b.5) was added to Colorado's child pornography statute in 1988, access to the internet was not yet ubiquitous. Prior to widespread use of the internet, child pornography generally came in the form of tangible objects such as books, periodicals, or videotapes. As a general rule, a person who viewed child pornography could not do so without physically possessing it.

¶28 Today, computer users can access child pornography simply by navigating to a website. Seeking out and accessing the images online harms children, even where the seeker does not manipulate or save the image, because navigation to and within child pornography websites promotes the exploitation of children. As the court of appeals reasoned, a computer user viewing an image online "has the ability to enlarge, save, copy, forward, or print the image. The user can also show the image on the screen to others." Marsh, 2011 WL 6425492, at *5. Thus, we conclude that for purposes of section 18–6–403(3), knowingly seeking out and viewing child pornography on the internet constitutes knowingly possessing or controlling it under the statute. Having made this determination, we now consider whether internet cache images can be evidence of knowing possession.

### 3. Internet Cache Images as Evidence of Knowing Possession

■ ¶29 Marsh argues that the internet cache images do not constitute evidence that he knowingly possessed the images. Because we hold that viewing images online amounts to possession, and because a cache image is automatically downloaded when an image is viewed online, we reject Marsh's argument and conclude that cache images can constitute evidence that the defendant knowingly possessed the images when he viewed them online. It is for the fact-finder to determine

7. Ramos was charged with receipt and possession of child pornography in violation of federal law. At the time he was charged, the statute provided that:
    (a) any person who—
    (2) knowingly receives ... (A) any child pornography that has been mailed or shipped or transported in interstate or foreign commerce by any means, including by computer, ... [or]
    (5)(B) knowingly possesses any ... material that contains an image of child pornography that has been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer ... [commits a crime]. 18 U.S.C. § 2252A (effective July 27, 2006 to October 7, 2008). Notably, Congress amended § 2252A(a)(5)(B) to add the words "or knowingly access with intent to view," to ensure that the statute covered accessing online child pornography. See Ramos, 685 F.3d at 130 n.7. According to the Senate report, "the amendment 'fills a gap in existing law that has led some courts to overturn convictions of possessors of child pornography. It amends the ... offense to clarify that it also covers knowingly accessing child pornography on the Internet with the intent to view child pornography.'" Id. (quoting S. Rep. No. 110–332, at 5 (2008)).

the weight to give cache images in light of all the other evidence in any given case.

¶30 To be sure, the presence of photos in the internet cache alone does not automatically establish knowing possession. See United States v. Winkler, 639 F.3d 692, 698–99 (5th Cir. 2011). As evidence in this case established, advances in internet technology have made it easier to access child pornography and have also facilitated cyber-attacks like viruses and hacking. Such intrusions could conceivably result in a computer displaying sexually exploitative images without the knowledge of that computer's owner, even where the owner has exclusive physical access to the computer.

¶31 The Ninth Circuit addressed this possibility in United States v. Kuchinski, 469 F.3d 853 (9th Cir. 2006). In that case, the court held that it could not treat internet cache images as sufficient evidence for sentencing purposes because the defendant never tried to access those files or even knew of their existence. Kuchinski, 469 F.3d at 862. It reasoned that internet cache images cannot, without more, support a conviction for possession and control:

> Where a defendant lacks knowledge about the cache files, and concomitantly lacks access to and control over those files, it is not proper to charge him with possession and control of the child pornography images located in those files, without some other indication of dominion and control over the images.

Id. at 863 (emphasis added). However, images contained in the internet cache may constitute evidence of possession, and therefore, the fact-finder may consider those images in reaching its ultimate conclusion. A number of other jurisdictions have adopted this approach. See, e.g., United States v. Kain, 589 F.3d 945, 948–50 (8th Cir. 2009) (holding that the presence of child pornography in temporary internet files is evidence of prior possession); New, 755 S.E.2d at 575–76. To determine if a defendant accessed the images stored in an internet cache and did so knowingly, the fact-finder must consider the cache images in light of all other evidence.

¶32 With the benefit of this analysis, we now consider whether the evidence in this case was sufficient for a reasonable jury to find that Marsh knowingly possessed or controlled more than twenty images of child pornography.

### 4. Sufficiency of the Evidence

¶33 For Marsh to be guilty of the class 4 felony of sexual exploitation of a child, he must have knowingly possessed more than twenty different items of sexually exploitative material. § 18–6–403(3)(b.5), (5)(b)(II). Marsh alleges that the evidence was insufficient for the jury to make this finding. We disagree.

¶34 To resolve sufficiency of the evidence claims, we determine whether the evidence, when considered as a whole and in the light most favorable to the People, is sufficient to support a conclusion by a reasonable person that the defendant is guilty of the crime charged beyond a reasonable doubt. Oram v. People, 255 P.3d 1032, 1038 (Colo. 2011).

¶35 Because numerous people had access to the computer in this case, and because of the possibility of viruses, hacking, and other means by which images could be unknowingly downloaded to the computer's hard drive, the existence of the internet cache images alone is not sufficient to prove that Marsh knowingly possessed the images in the cache. But those images are not the only evidence the jury considered. In addition to the presence of the cache images, the People presented evidence of the surrounding facts. Indeed, three of the images among Marsh's deleted files were identical to images in the internet cache. From that evidence, the jury could conclude that Marsh knew the files had been downloaded to his hard drive because he deleted them. Furthermore, the children testified that they found child pornography on Marsh's computer and that Marsh had saved child pornography websites in his internet "Favorites." The children also testified that Marsh accessed child pornography and showed it to them while they sat on his lap. Based on that evidence, the jury could reasonably infer that Marsh knowingly sought out and viewed child pornography, thus possessing it.

¶36 Moreover, the internet cache images were not the only incriminating pictures found on Marsh's computer. Three images identical to the internet cache images were also recovered from his deleted files.[8] The expert also recovered four additional images from Marsh's deleted files and one additional image from his My Pictures folder, and the jury heard the computer expert testify that he had recovered at least thirty-eight other files containing sexually exploitative images that had been downloaded on Marsh's computer (even if these thumbnail database files could not be attributed to the relevant time period). The jury was free to assign the weight it thought appropriate to the internet cache and consider its relevance in light of all the evidence presented. Therefore, considering the evidence as a whole and viewed in the light most favorable to the People, this evidence supported a conclusion by a reasonable person that, beyond a reasonable doubt, Marsh knowingly accessed the websites containing the images and displayed them. Thus, the evidence was sufficient to support the jury's conclusion that Marsh possessed more than twenty sexually exploitative images.

¶37 Having concluded that the evidence was legally sufficient to convict Marsh on the possession charges, we now turn to the forensic interviewers' testimony.

## B. Forensic Interviewers' Testimony

¶38 Marsh contends that the trial court erred in permitting two forensic interviewers to offer expert testimony in the guise of lay opinion. We consider whether the admission of the interviewers' testimony harmed Marsh.

### 1. Standard of Review

¶39 We review a trial court's evidentiary decisions, including decisions about the scope of opinion testimony, for an abuse of discretion. People v. Stewart, 55 P.3d 107, 122 (Colo. 2002). A trial court abuses its discretion only when its ruling is manifestly arbitrary, unreasonable, or unfair. Id.

### 2. Lay Testimony vs. Expert Testimony

¶40 We address the distinction between lay and expert testimony in Venalonzo v. People, 2017 CO 9, 388 P.3d 868, which we also issue today. In that case, we hold that a forensic interviewer's testimony describing her training and interviewing techniques did not constitute expert testimony because in that portion of her testimony the witness offered only a general overview of interview protocol that relied on ordinary, not specialized, knowledge and did not make any inferences about the case at hand. Id. at ¶ 27. We also hold, however, that the same witness's testimony about the significance of certain inconsistencies in the child victims' interviews was impermissible expert testimony because the interviewer drew inferences that the ordinary person would not have drawn without the benefit of her testimony. Id. at ¶ 30. We conclude that the admission of improper expert testimony harmed Venalonzo because the interviewer in that case justified inconsistencies in the child victims' testimony when the child victims were the sole witnesses to the alleged crime. Id. at ¶ 50.

¶41 Here, we need not determine whether the trial court erred in admitting the forensic interviewers' testimony as lay opinion because, even assuming this was error, we conclude that it would not require reversal. Marsh argues that the proper standard of review is constitutional harmless error, while the People argue that the proper standard is harmless error. Under constitutional harmless error review, an error does not require reversal if the court is confident beyond a reasonable doubt that the error did not contribute to the guilty verdict. Golob v. People, 180 P.3d 1006, 1013 (Colo. 2008). Under harmless error review, on the other hand, erroneous admission of evidence does not require reversal if the error was harmless under the circumstances. Liggett v. People, 135 P.3d 725, 733 (Colo. 2006). The admission of this testimony would not require reversal under either standard of review. In

---

8. These three files were counted as both internet cache images and deleted files, and thus were counted twice. However, even after removing these three images from the internet cache total and assuming the computer expert only had fourteen unique internet cache images, the overall number of images from the relevant time period still amounts to twenty-two.

light of the other evidence admitted at trial, we conclude beyond a reasonable doubt that the admission of this testimony did not contribute to the guilty verdict. Thus, the admission would not require reversal even under the standard of review most favorable to Marsh, so we need not determine which standard applies.

¶42 We conclude this testimony did not contribute to the guilty verdict because both Martin and Peterson testified briefly and provided only general background information about the interview process. The testimony was of minimal assistance to the jury. The interviewers offered no inferences about the case or opinions on the children that they interviewed. Furthermore, each of the child victims testified at trial and was subject to cross-examination, and other witnesses also testified and corroborated their accounts. Finally, the prosecutor did not rely on the forensic interviewers' testimony in closing argument. Accordingly, we do not reach the question of whether Martin and Peterson's testimony was properly admitted because even if the trial court erred in admitting the testimony, the error was harmless.[9]

### III. Conclusion

¶43 First, we hold that when a computer user seeks out and views child pornography on the internet, he possesses the images he views. Since the evidence presented at trial established that Marsh's cache contained images that a computer user had previously viewed on the web browser, we conclude that the internet cache images qualified as relevant evidence that Marsh had previously viewed, and thus possessed, those images. Therefore, when considered as a whole and in the light most favorable to the People, the evidence was sufficient to support the jury's conclusion that Marsh possessed more than twenty images depicting child pornography. Second, we hold that even if the trial court improperly admitted the forensic interview-

ers' testimony as lay opinion, the error was harmless. Therefore, we affirm the court of appeals' judgment in its entirety.

JUSTICE COATS concurs in part and concurs in the judgment, and JUSTICE EID joins in the concurrence in part and concurrence in the judgment.

JUSTICE EID concurs in part and concurs in the judgment in part.

JUSTICE GABRIEL concurs in part and dissents in part, and JUSTICE MÁRQUEZ joins in the concurrence in part and dissent in part.

JUSTICE COATS, concurring in part and concurring in the judgment.

¶44 For the reasons I have offered in my alternate opinion in Venalonzo v. People, 2017 CO 9, 388 P.3d 868, I disagree with the majority's understanding of the distinction between lay and expert testimony; however I agree with the majority that the erroneous admission of the forensic interviewers' testimony as lay opinion in this case would be harmless in any event.

¶45 I concur in the remainder of the majority opinion and the judgment of the court affirming the judgment of the court of appeals in its entirety.

I am authorized to state that JUSTICE EID joins in this concurrence in part and this concurrence in the judgment.

JUSTICE EID, concurring in part and concurring in the judgment in part.

¶46 I agree with the majority's conclusion that a defendant may "knowingly ... [p]ossess[ ] or control[ ]" child pornography under section 18-6-403(3) by knowingly seeking out and viewing child pornography on the internet. Maj. op. ¶ 28. I disagree, however, with the majority's conclusion that "because possession has a number of definitions, the stat-

---

9. Marsh also argues that this testimony harmed him because it went to the child victims' credibility. We disagree. The forensic interviewers testified that they employ special techniques to make children feel comfortable, avoid suggestive questions, and find out whether "something happened" to a child. This testimony did not amount to opinions that the children in this case were telling the truth. Cf. Venalonzo, ¶ 36 (concluding that forensic interviewer testimony justifying inconsistencies among children's statements amounted to improper bolstering of the children's credibility).

ute's plain language is unclear." Id. at ¶ 22. I would simply hold that the statute's plain language is plain. The fact that this court has not applied the statutory language to this context before does not in itself create a statutory ambiguity. See Burnett v. Dep't of Nat. Res., 2015 CO 19, ¶ 51, 346 P.3d 1005, 1014 (Eid, J., concurring in the judgment). Here, the definitions cited by the majority suggest that the statutory term "possession" requires a certain degree of control over the object. Maj. op. ¶ 22 n.6. The question is whether viewing an online image of child pornography constitutes such control. I believe it does. As the court of appeals put it (in a sentiment echoed by the majority), a computer user viewing an image online "has the ability to enlarge, save, copy, forward, or print the image. The user can also show the image on the screen to others." Marsh v. People, —— P.3d ——, 2011 WL 6425492, *5 (Colo. App. Dec. 22, 2011). See also maj. op. ¶ 28 (citing the court of appeals). Like the majority, I would reject Marsh's argument that the statute requires something more. I therefore concur with all of Part II.A. of the majority opinion except for Part II.A.2. I also concur in the judgment as to Part II.B. for the reasons set forth by Justice Coats in his separate opinion.

JUSTICE GABRIEL, concurring in part and dissenting in part.

¶47 I agree with the majority's conclusion that even if the trial court had erred in admitting the forensic interviewers' testimony under CRE 701, any such error was nonetheless harmless. For several reasons, however, I cannot agree that the evidence presented at trial was substantial and sufficient to establish that Marsh knowingly possessed or controlled over twenty sexually exploitative items pursuant to section 18–6–403(3)(b.5) and (5)(b)(II), C.R.S. (2016).

¶48 First, the majority interprets section 18–6–403(3)(b.5) to criminalize "knowingly seeking out and viewing child pornography on the internet." Maj. op. ¶ 28. In my view, this construction is unsupported by—and indeed rewrites—the plain language of the statute, which provides that a person commits sexual exploitation of a child when he or she "knowingly ... [p]ossesses or controls" any sexually exploitative material. § 18–6–403(3)(b.5).

¶49 Second, although I believe that the evidence was substantial and sufficient to establish Marsh's knowing possession or control of one image from his computer's "My Pictures" folder, seven deleted files, and three of the seventeen images contained in his computer's internet cache (i.e., eleven sexually exploitative items), in my view, the evidence was insufficient to establish Marsh's knowing possession or control of the other fourteen images found in his computer's internet cache. Indeed, even accepting the majority's construction of section 18–6–403(3)(b.5), no evidence in this case established that Marsh (or anyone else) either (1) sought out or viewed those fourteen images on the computer at issue or (2) even knew that they were in the computer's internet cache.

¶50 As a result, I do not believe that the prosecution established that Marsh knowingly possessed or controlled more than twenty sexually exploitative items.

¶51 Accordingly, I respectfully concur in part and dissent in part.

### I. Analysis

¶52 I first discuss what I believe to be the proper construction of section 18–6–403(3)(b.5) and then proceed to address that statute's application to the evidence presented in this case.

### A. Section 18–6–403(3)(b.5)

¶53 Section 18–6–403(3)(b.5) provides, in pertinent part, "A person commits sexual exploitation of a child if, for any purpose, he or she knowingly ... [p]ossesses or controls any sexually exploitative material for any purpose...." (Emphasis added.)

¶54 As many courts have recognized in construing statutory language similar to that at issue here, the mere viewing or presence in an internet cache of sexually exploitative material is, standing alone, insufficient to support a conviction. See United States v. Dobbs, 629 F.3d 1199, 1205 (10th Cir. 2011) (concluding that the mere presence of child

pornography in the cache of the defendant's computer was proof that the files were received through the automatic caching process but that such evidence did not establish knowing receipt); Tecklenburg v. Appellate Div., 169 Cal.App.4th 1402, 87 Cal.Rptr.3d 460, 473 (2009) (distinguishing the viewing of child pornography from the knowing possession and control of images of child pornography); People v. Kent, 19 N.Y.3d 290, 947 N.Y.S.2d 798, 970 N.E.2d 833, 835, 840 (2012) (concluding that (1) "merely viewing Web images of child pornography does not, absent other proof, constitute either possession or procurement within the meaning of our Penal Law" and (2) "regardless of a defendant's awareness of his computer's cache function, the files stored in the cache may constitute evidence of images that were previously viewed; to possess those images, however, the defendant's conduct must exceed mere viewing to encompass more affirmative acts of control such as printing, downloading or saving").

¶55 Indeed, the majority itself recognizes this point when it quotes United States v. Kuchinski, 469 F.3d 853, 863 (9th Cir. 2006), for the proposition that

> [w]here a defendant lacks knowledge about the cache files, and concomitantly lacks access to and control over those files, it is not proper to charge him with possession and control of the child pornography images located in those files, without some other indication of dominion and control over the images.

Maj. op. ¶ 31.

¶56 The question thus remains how we should construe "knowingly ... [p]ossesses or controls," as those terms are used in section 18–6–403(3)(b.5).

¶57 Although we have not previously decided this question, courts construing statutes similar to that at issue here have held that the prosecution must prove that the defendant reached out for and exercised dominion and control over such material. See, e.g., Ward v. State, 994 So.2d 293, 298–301 (Ala. Crim. App. 2007) (collecting cases and adopting such a requirement). I believe that such a standard properly effectuates the plain meaning of the terms "knowing posses-

sion or control," and I would adopt that standard here.

¶58 I am not persuaded otherwise by the majority's conclusion that "knowingly seeking out and viewing child pornography on the internet constitutes knowingly possessing and controlling it under the statute." Maj. op. ¶ 28. As an initial matter, this language is unsupported by, and in my view rewrites, the plain language of section 18–6–403(3)(b.5).

¶59 In addition, although other jurisdictions have enacted statutes that expressly criminalize knowingly accessing, seeking out and accessing, or viewing child pornography, our legislature has not done so, and in my view, it is not appropriate for this court to criminalize that which our legislature has not.

¶60 Specifically, the corresponding federal child pornography statute expressly criminalizes "knowingly access[ing] with intent to view" child pornography. 18 U.S.C. § 2252(a)(4)(B) (2016).

¶61 Similarly, many states have expressly criminalized viewing, accessing, or seeking and accessing child pornography. See, e.g., Alaska Stat. Ann. § 11.61.127(a) (West 2016) ("knowingly possesses or knowingly accesses on a computer with intent to view"); Ark. Code Ann. § 5–27–304(a)(2) (West 2016) ("knowingly ... view"); D.C. Code Ann. § 22–3102(d)(1) (West 2016) (defining possession as "accessing the sexual performance if electronically received or available"); Fla. Stat. Ann. § 827.071(5)(a) (West 2016) ("knowingly possess, control, or intentionally view"); Idaho Code Ann. § 18–1507(2)(a) (West 2016) ("[p]ossesses or accesses"); Ky. Rev. Stat. Ann. § 531.335(1) (West 2016) ("[k]nowingly has in his or her possession or control" or "[i]ntentionally views"); Me. Rev. Stat. Ann. tit. 17–A, § 284(1)(a) (2016) ("intentionally or knowingly ... possesses or accesses with intent to view"); Mich. Comp. Laws Ann. § 750.145c(4) (West 2016) ("knowingly possesses or knowingly seeks and accesses"); Nev. Rev. Stat. Ann. § 200.727(1) (West 2016) ("knowingly, willfully and with the specific intent to view"); N.J. Stat. Ann. § 2C:24–4(b)(5)(b) (West 2016) ("knowingly possesses, knowingly views, or knowingly has

under his control"); N.Y. Penal Law § 263.11 (McKinney 2016) ("knowingly has in his possession or control, or knowingly accesses with intent to view"); Ohio Rev. Code Ann. § 2907.323(A)(3) (West 2016) ("[p]ossess or view"); Or. Rev. Stat. Ann. § 163.686(1)(a)(A)(i) (West 2016) ("[k]nowingly possesses or controls, or knowingly accesses with the intent to view"); 18 Pa. Stat. and Cons. Stat. Ann. § 6312(d) (West 2016) ("intentionally views or knowingly possesses or controls"); Tex. Penal Code Ann. § 43.26(a) (West 2016) ("knowingly or intentionally possesses, or knowingly or intentionally accesses with intent to view"); Wis. Stat. Ann. § 948.12(1m) (West 2016) ("possesses, or accesses in any way with the intent to view").

¶62 Our legislature, however, has not adopted such a standard. To the contrary, rather than criminalizing knowingly accessing (or seeking out) and viewing child pornography, our legislature chose, instead, to criminalize knowing possession or control, and we may not read into a statute language that is not there. See Boulder Cty. Bd. Of Comm'rs v. HealthSouth Corp., 246 P.3d 948, 954 (Colo. 2011). Nor do I believe that we may properly alter the plain language that the legislature employed to achieve what we believe the legislature nonetheless intended.

## B. Application

¶63 Applying what I believe to be the appropriate standard to the evidence presented in this case, I cannot agree with the majority that the prosecution's evidence sufficiently established that Marsh knowingly possessed or controlled all seventeen of the images that were found in Marsh's internet cache. To the contrary, I believe that the evidence established Marsh's knowing possession or control of only three of those images.

¶64 In considering a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the prosecution, and we must determine whether the evidence was substantial and sufficient to support a finding of the defendant's guilt beyond a reasonable doubt. See Dempsey v. People, 117 P.3d 800, 807 (Colo. 2005).

¶65 Here, I believe that the evidence would have allowed a reasonable jury to conclude that Marsh was interested in and had reached out for images of child pornography. In addition, the evidence established that duplicates of three of the images that were found in Marsh's internet cache were also found in his so-called "lost images." This evidence tended to show that Marsh had viewed and deleted those three images, and in my view, such evidence would have allowed a reasonable jury to conclude that Marsh had possessed and exercised dominion over those images.

¶66 Accordingly, I believe that the evidence was substantial and sufficient to establish that Marsh knowingly possessed or controlled those three images. See Ward, 994 So.2d at 301–02 (finding sufficient evidence to support the defendant's conviction under Alabama's child pornography statute when (1) a forensic examination of the university computer at issue showed that the defendant had used that computer and had "reached out" for 288 images of child pornography; (2) the defendant had the ability to copy, print, email, or send images from that computer to his home computer; and (3) the defendant's home computer also contained child pornography); Tecklenburg, 87 Cal.Rptr.3d at 473 (concluding that the evidence amply supported the jury's finding that the defendant had knowingly possessed or controlled images of child pornography when the evidence established that the defendant had actively searched for child pornography web sites, opened such web sites, went past the home pages, clicked through images on at least one site tour, displayed multiple images of child pornography from the web sites on his computer screen, and enlarged some of the images from thumbnail views); Kent, 947 N.Y.S.2d 798, 970 N.E.2d at 841–42 (concluding that the defendant was properly convicted of promoting and possessing a video and certain images containing child pornography when the evidence established that the defendant had downloaded or saved that video and those images and then deleted them); State v. Mercer, 324 Wis.2d 506, 782 N.W.2d 125, 137 (Wis. Ct. App. 2010) (finding sufficient evidence to support the defendant's child pornography conviction when the evi-

dence established, among other things, the defendant's "habit of surfing the Internet for pornography," his searches with terms associated with child pornography on at least fifty different days, his clicking through images in online magazines, and his deletion of such files, including from his internet cache).

¶67 I would reach a different conclusion, however, with respect to the other fourteen images that were found in Marsh's internet cache. None of those images was contained in Marsh's "lost images." Moreover, expert testimony at trial established, and the People conceded at oral argument before us, that images in the cache may not actually have appeared on the computer screen when the pertinent website was accessed. Finally, the evidence was undisputed that people other than Marsh had accessed the computer at issue to look at pornography.

¶68 On these facts, even considering the substantial evidence of Marsh's interest in child pornography (and even under the majority's "knowingly seeking out and viewing" standard), I cannot conclude that Marsh had reached out for and exercised dominion or control over these fourteen images. No evidence shows that Marsh searched for or did anything with these images. Indeed, no evidence established that he or anyone else either sought out, accessed, or viewed these images on the computer at issue or knew that they were in the internet cache. As a result, we are left with nothing more than the mere presence of these images in an internet cache, coupled with evidence of Marsh's interest in child pornography. In my view, such evidence was not substantial and sufficient to allow a reasonable jury to conclude that Marsh knowingly possessed or controlled these fourteen images. See Dempsey, 117 P.3d at 807; see also Dobbs, 629 F.3d at 1205; Kuchinski, 469 F.3d at 863;

Tecklenburg, 87 Cal.Rptr.3d at 473; Kent, 947 N.Y.S.2d 798, 970 N.E.2d at 835, 840.

¶69 Nor do I agree with the majority's suggestion that we can properly consider the thirty-eight thumbnail database files in order to conclude that the evidence established the requisite "more than twenty" images. See maj. op. ¶ 36. As the majority recognizes, the thirty-eight thumbnail files could not be attributed to the pertinent time period. See id. Accordingly, I do not agree that the jury could have properly considered those images in getting to the requisite number. It is one thing to allow a jury to assign whatever weight it deems appropriate to relevant evidence. It is quite another to say that a jury could properly assume the relevance of certain evidence when its relevance has not been established.

## II. Conclusion

¶70 For these reasons, I respectfully concur in the portion of the majority's opinion concluding that any error in the admission of the forensic interviewers' testimony was harmless. I respectfully dissent, however, from the portion of the majority's opinion concluding that sufficient evidence supported a finding that Marsh knowingly possessed or controlled more than twenty images depicting child pornography.

I am authorized to state that JUSTICE MÁRQUEZ joins in this concurrence in part and dissent in part.