23CA1631 Peo in Interest of LAM 08-01-2024 COLORADO COURT OF APPEALS Court of Appeals No. 23CA1631 El Paso County District Court No. 21JV517 Honorable Jessica L. Curtis, Judge The People of the State of Colorado, Appellee, In the Interest of L.A.M., a Child, and Concerning S.M., Appellant. JUDGMENT AFFIRMED Division VII Opinion by JUDGE TOW Gomez and Kuhn, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced August 1, 2024 Kenneth R. Hodges, County Attorney, Melanie E. Gavisk, Assistant County Attorney, Colorado Springs, Colorado, for Appellee Jenna L. Mazzucca, Counsel for Youth, Salida, Colorado, for L.A.M. The Morgan Law Office, Kristofr P. Morgan, Colorado Springs, Colorado, for Appellant 
1 ¶ 1 In this dependency and neglect proceeding, S.M. (mother) appeals the juvenile court’s judgment adjudicating L.A.M. (the child) dependent and neglected and allocating parental responsibilities to I.S. (father). We affirm the judgment. I. Background ¶ 2 The El Paso County Department of Human Services filed a petition in dependency and neglect regarding then eleven-year-old L.A.M., then nine-year-old J.S., and then seven-year-old A.S.
1 The petition alleged that medical personnel had concerns that mother was seeking unnecessary medical care and procedures for all three children. The petition further alleged that father had not had contact with the child for quite some time. ¶ 3 The Department initially placed all three children in foster care. After the child and father engaged in reintegration therapy to rebuild their relationship, the child moved in with father. Father then moved for an allocation of parental responsibilities (APR) asking for sole physical custody and sole decision-making 1 Father is not the father of the mother’s other two children. 
2 responsibilities concerning the child and for supervised visits with mother. ¶ 4 Mother and the Department agreed to a “continued” or “deferred” adjudication pursuant to section 19-3-505(5), C.R.S. 2023. Under the terms of the agreement, mother admitted she and the children needed intervention from the Department and she agreed to cooperate with the caseworker and the children’s guardian ad litem and to comply with the Department’s treatment plan. Mother’s main objective in the treatment plan was to complete a psychological evaluation by an agreed upon provider and to engage in any recommended treatment. A little over a year later, the Department moved to revoke mother’s deferred adjudication. ¶ 5 After an evidentiary hearing, the juvenile court revoked mother’s deferred adjudication and adjudicated all three children dependent and neglected. It also granted father’s motion for an APR and closed the case as it relates to the child. The dependency and neglect proceeding continued with respect to J.S and A.S. and they are not the subject of this appeal. 
3 II. Subject Matter Jurisdiction ¶ 6 Mother first asserts that the juvenile court did not have subject matter jurisdiction to enter the adjudication. We disagree. A. Standard of Review ¶ 7 “Where the question of whether a court lacked subject matter jurisdiction does not involve a factual dispute, the determination of that court’s subject matter jurisdiction is a question of law that we review de novo.” People in Interest of J.W. v. C.O., 2017 CO 105, ¶ 17. To the extent that mother’s appeal requires us to interpret statutes, our review is also de novo. People in Interest of E.Q., 2020 COA 118, ¶ 16. B. Relevant Law ¶ 8 “Subject matter jurisdiction concerns the court’s authority to deal with the class of cases in which it renders judgment.” People in Interest of E.H., 837 P.2d 284, 290 (Colo. App. 1992). The juvenile court has “exclusive original jurisdiction in proceedings . . . [c]oncerning any child who is neglected or dependent.” § 19-1-104(1)(b), C.R.S. 2023. Thus, in a dependency and neglect proceeding, the court’s jurisdiction over a child rests on the status of the child as dependent or neglected. J.W., ¶ 20. 
4 ¶ 9 A child may be found dependent or neglected at an adjudicatory hearing. People in Interest of S.T., 2015 COA 147, ¶ 17; see § 19-1-104(1)(b), C.R.S. 2023. At such a hearing, the juvenile court determines whether the allegations in the petition are supported by a preponderance of the evidence or, alternatively, accepts the parent’s admission. See J.W., ¶ 32. As relevant here, the “court’s acceptance of [a parent’s] admission establishe[s] the status of the children as dependent or neglected, and, thus, the court’s continued jurisdiction over the children.” Id. ¶ 10 Section 19-3-505(5) provides for a process that courts and practitioners often refer to as a “deferred adjudication” or “continued adjudication.” Under section 505(5), the juvenile court may continue an adjudicatory hearing “from time to time” (1) after it finds that the allegations of the petition are supported by a preponderance of the evidence, but (2) “before making an adjudication.” Subsection (5)(b) allows the court to continue the adjudicatory hearing “no longer than six months without review by the court.” But the statute permits the court to “continue the case for an additional period not to exceed six months . . . .” Id. After expiration of the twelve-month period, the court shall either dismiss 
5 the petition or sustain it. See People in Interest of K.M.J., 698 P.2d 1380, 1382 (Colo. App. 1984) (“[T]he court can hold hearings on the petition for a maximum of two six-month periods after which it can take no other action than either to dismiss or sustain the petition.”). C. Analysis ¶ 11 Mother asserts that the juvenile court exceeded its jurisdiction by conducting a hearing outside the twelve-month time frame permitted by section 19-3-505(5)(b). We are not persuaded. ¶ 12 “[A] procedural statute or a court rule normally does not address jurisdictional issues; restrictions upon a court’s jurisdiction are generally to be found in statutes directly addressing that subject.” Levin v. Anouna, 990 P.2d 1136, 1138 (Colo. App. 1999). ¶ 13 In People in Interest of A.W., 74 P.3d 497, 498-99 (Colo. App. 2003), a division of this court rejected the contention that a juvenile court acted without jurisdiction when it conducted a revocation of a deferred adjudication hearing outside of section 19-3-505(5)(b)’s twelve-month time limit. Accordingly, the fact that more than twelve months had passed since the adjudication was deferred did 
6 not implicate the juvenile court’s jurisdiction. A.W., 74 P.3d at 498-99. ¶ 14 To the extent it could be argued that the juvenile court’s decision to conduct hearings beyond the twelve months was “an erroneous decision not affecting jurisdiction,” id. (quoting People in Interest of Clinton, 762 P.2d 1381, 1387 (Colo. 1988)), mother failed to preserve any such error. She never asserted, either in writing or orally, that due to the passage of time, the juvenile court lacked the authority conduct the hearing or to enter the adjudication. We do not consider non-jurisdictional issues not raised in the trial court. Id. III. APR to Father ¶ 15 Mother also contends that the juvenile court erred when it granted father’s APR motion. Mother asserts that an APR to father was not in the best interests of the child. We discern no error. A. Standard of Review ¶ 16 An allocation of parental responsibilities is within the juvenile court’s discretion and will not be disturbed on review if competent evidence in the record supports the judgment. See People in Interest of A.M.K., 68 P.3d 563, 565 (Colo. App. 2003). It is for the 
7 juvenile court, as the trier of fact, to determine the sufficiency, probative effect, and weight of the evidence, and to assess the credibility of witnesses. People in Interest of A.J.L., 243 P.3d 244, 249-50 (Colo. 2010); see also In re Parental Responsibilities Concerning B.R.D., 2012 COA 63, ¶ 15 (when there is record support for the court’s findings, its resolution of conflicting evidence is binding on review). B. Relevant Law ¶ 17 When determining custody or allocating parental responsibilities in a dependency and neglect proceeding, the court must consider the legislative purposes of the Children’s Code under section 19-1-102, C.R.S. 2023. People in Interest of C.M., 116 P.3d 1278, 1281 (Colo. App. 2005). The overriding purpose of the Children’s Code is to protect a child’s welfare and safety by providing procedures to serve the child’s best interests. L.G. v. People, 890 P.2d 647, 654 (Colo. 1995). Thus, the court must allocate permanent custody and parental responsibilities consistent with the child’s best interests. People in Interest of L.B., 254 P.3d 1203, 1208 (Colo. App. 2011); see also L.A.G. v. People in Interest of A.A.G., 912 P.2d 1385, 1391 (Colo. 1996). 
8 C. Analysis ¶ 18 The juvenile court found that an APR to father was in the child’s best interests. The court found that father was fit and protective of the child. It noted that mother refused to complete a psychological evaluation and that her justification for doing so was unreasonable. ¶ 19 The court found that significant safety issues existed with respect to mother’s parenting, noting that when the case opened “there was a surgery scheduled for [the child] to have her legs broken and reset and that’s frightening.” It further found that those safety issues still existed because mother had not completed a psychological evaluation. ¶ 20 Mother argues that the juvenile court erred because the child expressed that she opposed the APR and wanted mother to have more time to work on her treatment plan. But the juvenile court acknowledged the child’s position that she wanted the case to remain open because mother and father “don’t work well together,” and to give mother more time to seek treatment. However, the court determined that there were no safety issues related to placement with father and it had an obligation to secure 
9 permanency for the child as soon as possible. Mother presents no authority suggesting that the court was required to defer to the child’s wishes in spite of these other considerations. ¶ 21 Mother also objects to the court’s finding that father is a safe parent and argues that the child had not seen him for several years and that they were still rebuilding their relationship. The court acknowledged these facts but recognized that the child had been living with father without incident for more than a year and that father and the child had successfully completed reintegration therapy. The court further ordered additional family therapy between father and the child to facilitate better communication. Mother’s assertions that father presented safety risks essentially ask us to reweigh the evidence on appeal, which we cannot do. See A.J.L., 243 P.3d at256 (a reviewing court cannot reweigh the evidence or substitute its own findings for the juvenile court’s). ¶ 22 Lastly, mother argues that she and the child “maintained a loving relationship,” that she “continued to provide emotional support to the child,” and that the child “repeatedly asked the court not to disrupt her relationship” with mother. Again, the court acknowledged the importance of mother’s longstanding relationship 
10 with the child. And its parenting plan allowed for continuing supervised visits while mother addressed her mental health. See C.M., 116 P.3d at 1282 (the focus of a permanent legal custody decision is furtherance of a child’s best interests, not a parent’s custodial interest). ¶ 23 Given the record support for the juvenile court’s findings, we conclude that the court’s APR was not manifestly arbitrary, unreasonable, or unfair. Nor did the court misapply the law. See M.A.W. v. People in Interest of A.L.W., 2020 CO 11, ¶ 32 (defining an abuse of discretion to include misapplication of the law). Accordingly, we may not disturb the court’s decision. IV. Disposition ¶ 24 The judgment is affirmed. JUDGE GOMEZ and JUDGE KUHN concur.